These actions for damages, which were consolidated in the lower court and here for trial and decision, arise out of a collision occurring on Haynes Boulevard between three dump trucks, two of which are owned by the plaintiffs and the other by the defendant, Dewey Miller. Plaintiff, Milton E. Drewes, owner of one of the dump trucks, brought suit against Miller and his liability insurance carrier, American Automobile Insurance Company, alleging that the accident was caused by the negligence of the driver of the Miller truck; that, as the result thereof, his truck sustained damages amounting to $785 and that he was further entitled to recover the sum of $1350, representing loss of use of his truck for a period of ninety days at $15 per day. Plaintiff, Raymond Lewis, likewise alleging that the accident was due to the carelessness of the driver of the Miller truck, sought recovery against the defendants of the sum of $89 for damages sustained by his truck and an additional $150 for loss of use of the truck for 10 days at $15 per day.
The defendants admitted the accident but denied any liability to the respective plaintiffs. They contended that Miller's driver was free from fault and that the accident was due solely to the carelessness of the driver of the Drewes truck. Alternatively, insofar as Drewes claim was concerned, defendants pleaded contributory negligence on the part of his driver as a bar to his recovery.
After a trial in the lower court on the issues formed by the pleadings, there was judgment in favor of plaintiff, Drewes, and against the defendants, in solido, for $572 and in favor of plaintiff, Lewis, for $89. Defendants have appealed and the respective plaintiffs have answered, praying for increases in the awards allowed them by the trial judge.
[1] The issues presented for decision, respecting liability, involve questions of fact only. The accident occurred on August 17, 1944, at about 2:45 p.m. on Haynes Boulevard. This boulevard is a black-topped two-way road, 25 feet in width, with a 6 foot gravel shoulder on each side, running from New Orleans to Little Woods, Louisiana. It is more or less parallel with the shoreline of Lake Ponchartrain and, at or near the point of collision between the vehicles here involved and for a distance of several hundred yards of the approach, the road runs in a straight line. Plaintiffs' theory of the accident (which is substantiated by their witnesses) is as follows: Four vehicles were within the immediate vicinity of the accident at the time it occurred. Travelling in the direction of Little Woods were three vehicles (1) a station wagon, owned by an establishment known as "Mama Lou's" which abuts the boulevard; (2) the Lewis truck and (3) the Miller truck. The fourth vehicle, the Drewes truck, was coming from the opposite direction, or towards New Orleans. Shortly before the mishap, the Miller truck had been preceding the Lewis truck. However, it appears that the Miller truck stopped for the purpose of discharging a passenger and, while it was thus stopped, the Lewis truck passed and followed closely behind the station wagon until the latter came to a stop on the right hand side of the highway in front of "Mama Lou's" establishment. When it did so, the Lewis truck also stopped and then started forward again in an endeavor to pass it. Just as the Lewis truck was in the act of passing the station wagon, the Miller truck, which was travelling to the rear of the Lewis truck at an admitted speed of 35 miles per hour, overtook the Lewis truck and swerved further over on the left side of the road in order to pass it. While the Miller truck was engaged in this maneuver, the Drewes truck appeared on the scene from the opposite *Page 822 
direction and the driver thereof, finding the entire road blocked by the three oncoming vehicles, slowed down in the hope that the Miller truck would be able to regain its proper side of the highway and thus avert a collision. However, the efforts of the driver of the Drewes truck were unavailing because the two trucks were in such close proximity to each other that the driver of the Miller truck, despite his speed, was unable to complete his overtaking operation and provide sufficient space for the Drewes truck to pass. As a consequence, the left front fender and bumper of the Drewes truck came in contact with the left rear fender and wheel of the Miller truck, causing the right front wheel and fender of the latter to collide into the left side of the Lewis truck. The impact between the left front fender and bumper of the Drewes truck and the left rear fender and Wheel of the Miller truck caused the Drewes truck to swerve to its left on the roadway where it turned over on its left side with its front facing the south side of the road.
The defendants' theory of the accident, as testified to by the driver of the Miller truck, gives a wholly different picture of the occurrence. The driver, one J.W. Roscoe, stated that the accident did not occur until after the Lewis truck had completely passed the stopped station wagon and had regained its proper side of the highway. He says that, after the Lewis truck had passed the station wagon and pulled in front of it, it came to a stop "half on the shoulder and half in the roadway"; that, while it was in this position, he attempted to pass it and that, when he did so, the Drewes truck, travelling on the wrong side of the road at a high rate of speed, struck the left rear end of his truck and caused its right front fender and wheel to collide with the left side of the stopped Lewis truck.
The judge of the lower court did not believe the driver of the Miller truck and accepted the statements of plaintiffs' witnesses as genuine. We fully agree with his conclusion on the facts and hold that the accident occurred substantially in the manner as claimel by plaintiffs. It follows, therefore, that there cannot be any doubt that the driver of the Miller truck was guilty of the grossest sort of negligence.
This resolution settles the liability of the defendants, insofar as plaintiff, Lewis, is concerned. However, defendants claim that the driver of the Drewes truck was guilty of contributory negligence and they point to the evidence of four of their witnesses (who did not see the accident but who stated that they observed the Drewes truck travelling in the roadway at a speed of 60 miles an hour at a point several hundred yards from the place at which the accident occurred) as establishing their plea.
[2] The testimony concerning the speed of the Drewes truck given by defendants' witnesses does not impress us to any appreciable extent as it seems to consist of mere vague guesses and impressions of witnesses who had little more than a fleeting glance of the truck as it was travelling on the highway. Furthermore, Champagne, the truck driver, denies that he was travelling at a rate greater than twenty-five miles per hour. In such circumstances, we cannot say that defendants have established their plea of contributory negligence by a clear preponderance of evidence in view of the conclusion reached below.
[3] The only other question presented for consideration is the quantum of damages. The estimates, introduced in evidence, showing the costs of the necessary repairs to the damaged vehicles are $572 for the Drewes truck and $89 for the Lewis truck. Lewis complains that the award in his favor for $89 should be increased so as to allow him recovery of $30 for two days loss of use of the truck while the repairs were being made. Inasmuch as Lewis has failed to produce evidence exhibiting that he expended any sum whatever for the rental of another truck for two days to replace the damaged truck, his claim for loss of use cannot be sustained.
[4] Drewes has also answered the appeal and maintains that, since the evidence shows that his truck was so badly damaged that it could not be repaired, the judge should have awarded him $610, representing the value of the truck, rather than $572 which is the estimate of the cost of the repairs. We, however, find that the judge took this fact into consideration in arriving at the judgment in Drewes' favor for $572. He indicated that, in his opinion, the value *Page 823 
of the truck was approximately $572, the amount for which the repairs could have been made.
Drewes further complains that the judge was in error in refusing to permit recovery for the loss of use of his truck for ninety days at $15 per day. He testified, and his evidence is not contradicted, that the damaged truck with others, either rented or owned by him, were engaged in performance of a hauling contract; that, as a result of the accident, he was required to rent an additional truck at a cost of $30 per day to replace the damaged one; that the $30 rental paid for the truck included salary of the driver, gasoline and other items, amounting to approximately $15 per day, so that the amount of his loss, by reason of the accident, was $15 per day covering the ninety day period during which he hired the additional truck.
[5] The law relating to the right of an owner of a damaged vehicle to recover damages for loss of its use is well settled. If the vehicle is damaged to such an extent that it cannot be repaired and is a total loss, no recovery can be had for loss of use. See Adams v. Bell Motors, Inc., 9 La. App. 441, 121 So. 345; Burrage v. Tri-State Transit Co., La. App., 149 So. 125 and Blashfield's Cyclopedia of Automobile Law, Perm Ed., Vol. 6, § 3417. The foregoing authorities are promised upon the theory that, when the plaintiff is reimbursed for the value of his car, he has been fully compensated for his loss and that, since the car is a total loss, he cannot be awarded additional damages which result from the deprivation of use of a chattel which can never be used again.
[6] On the other hand, it is equally well established that, where the damaged vehicle can be and is repaired, the injured party may, in addition to reimbursement for the cost of the repairs, recover the actual expense he has been required to defray resulting from the deprivation of the use of the vehicle during the time the repairs are being made. See Sherwood v. American Railway Express Co., 158 La. 43, 103 So. 436.
[7] In two later cases, however, this court has recognized that there may be instances in which it would be unjust to refuse plaintiff a limited recovery for actual damage resulting from deprivation of use even though the accident occasions the total destruction of the vehicle — that is, in cases where the owner is unable to determine immediately after the accident whether the car is damaged to such an extent that it is incapable of being repaired or that repairs are inadvisable. In such instances, we have held that the plaintiff should be permitted to recover the actual damages resulting from loss of use of the car for the interval during which he is considering the nature of the damage and ascertaining whether the vehicle can be restored to its former condition. By inference, we approved this principle in Maggio v. Bradford Motor Express, La. App., 171 So. 859, and expressly applied it in the recent case of Adam v. English, La. App., 21 So.2d 633.
[8] Of course, in order to sustain such a claim, it must be proved, initially, that plaintiff acted with dispatch and did everything within his power to minimize his damage. Thus, in the Adam case, where it was shown that plaintiff's car was damaged to such an extent that it was doubtful whether it could be repaired, we limited recovery to the damage sustained by her for loss of use occasioned within a week or two following the accident on the ground that she could have, within that period, easily ascertained whether the damages to her car were beyond repair.
[9] When we apply the foregoing jurisprudence to the facts of the case at bar, we conclude that Drewes should have been in a position within ten days after the accident to have determined whether his damaged truck could have been repaired. The evidence shows that, on August 25th 1944, or eight days after the accident, he received an estimate of $572 for the repair work and, on August 31st, he obtained another estimate amounting to $785. On this last estimate, there is a notation "Not able to do job on account of labor parts" meaning, of course, that, due to the War, the work could not be done. Plaintiff testified that, after he obtained these estimates and was advised that repairs could not be made due to the War, he sold the wreck for $25, exclusive *Page 824 
of the tires, for which he received approximately $120. Thus, he was fully advised, at least ten days after the accident, that, even if the truck could have been restored to its former condition, it was impossible for the work to be performed due to war shortages. Under such conditions, his recovery for actual loss of use (which amounts to $15 per day according to Drewes' uncontradicted statement) will be restricted to a period of ten days, or the sum of $150.
For the reasons assigned, the judgment appealed from is amended by increasing the amount thereof in favor of plaintiff, Milton E. Drewes, to the sum of $722 and, as thus amended, it is affirmed at the cost of appellants.
Amended and affirmed.