CARLTON C. ROBERTS v. PILOT FREIGHT CARRIERS, INC.

(Filed 1 May 1968.)

1. **Automobiles § 58— Evidence held sufficient to show employee's negligence in making sudden turn without warning onto a private driveway.**

Plaintiff's evidence tended to show that defendant's employee, driving a 50 to 52 foot tractor-trailer at a speed of 50 miles per hour, passed plaintiff's truck on the highway and, after signalling his intention to do so, returned to the right lane in front of the truck, that with his right turn signal still blinking defendant's employee immediately turned to the right into a private driveway, and that plaintiff collided into the rear of the tractor-trailer unit. *Held:* The evidence is sufficient to establish that defendant's negligence in violating G.S. 20-154(a) and (b) was the proximate cause of the collision and is insufficient to establish that plaintiff was contributorily negligent as a matter of law, and defendant's motions for nonsuit were properly overruled.

2. **Damages § 4—**

When a plaintiff's vehicle is damaged by the negligence of a defendant, the plaintiff is entitled to recover the difference between the fair market value of the vehicle before and after the damage, and if the vehicle can be economically repaired, the plaintiff will also be entitled to recover special damages for loss of its use during the time he was necessarily deprived of it.

3. **Same—**

In general, the right to recover for loss of use of a vehicle is limited to situations in which the damage to the vehicle can be repaired at a reasonable cost and within a reasonable time, but where the vehicle is totally destroyed or where parts for repair are unavailable, the plaintiff is entitled to damages for loss of use only if another vehicle was not immediately obtainable for purchase and, in consequence, he suffered loss of earnings during the interval between the accident and the acquisition of another vehicle.

4. **Same; Damages § 15—**

Ordinarily, the measure of damages for loss of use of a business vehicle is the cost of renting a similar vehicle during a reasonable period for repairs, but to recover for loss of profits resulting from deprivation of the vehicle, plaintiff must show (1) that he made a reasonable effort to obtain a substitute vehicle for the time required to repair or replace the damaged one, and (2) that he was unable to obtain one in the area reasonably related to his business.

5. **Damages §§ 15, 16—**

In an action to recover damages arising out of a collision between plaintiff's truck and the tractor-trailer of the defendant, it was error for the court to instruct the jury that plaintiff was entitled to lost profits from the loss of his truck when plaintiff's evidence revealed that repairs to his truck could have been economically made and when plaintiff made no showing that he attempted to hire a substitute vehicle or, failing that, to purchase another truck.

**6. Automobiles § 90—**

An instruction on the issue of negligence which incorporates the provisions of G.S. 20-140 without further instructions upon what facts the jury might find from the evidence that would constitute reckless driving, *held* erroneous as not complying with G.S. 1-180.

LAKE and HUSKINS, JJ., took no part in the consideration or decision of this case.

APPEAL by defendant from *Hall, J.,* August 1967 Assigned Civil Session of WAKE, docketed and argued at the Fall Term 1967 as Case No. 539.

This action for property damage arises out of a collision between plaintiff's 1957 Ford dump truck and defendant's tractor-trailer. The accident occurred at approximately 4:30 p.m. on 9 December 1965 in the heavily graveled, 35-foot driveway which connects the premises of Carolina Machinery and Supply Company (M. & S. Co.) with US Highway No. 70. M. & S. Co. is located on the north side of No. 70 a few miles west of Raleigh. In this area, No. 70 is a four-lane highway for east-west traffic with a median dividing the two lanes for opposing traffic. Both vehicles were proceeding west. Plaintiff's employee, C. G. Goldston, was hauling a load of gravel in the dump truck. Defendant's employee, H. H. Bost, was taking the tractor-trailer to the M. & S. Co. From a hillcrest 1500-1800 feet east of the M. & S. Co.'s building, the highway runs slightly downgrade until it "flattens out" several hundred feet from the driveway. At the time of the accident, the weather was clear and the road dry. The posted speed limit for the area was 60 MPH for automobiles and 50 MPH for trucks.

Evidence for plaintiff tended to show: Goldston first saw the tractor-trailer when it approached from his rear in the left or passing lane east of the hillcrest. Goldston was driving in the right lane for westbound traffic at a speed of about 45 MPH. The tractor-trailer passed him at a speed of 50 MPH. Immediately thereafter Goldston saw its right-turn signal come on, and he responded by blinking his lights — his signal to Bost that he could safely return to the right lane. Bost then applied his brakes and Goldston realized that he was stopping. Goldston applied his brakes also and — because there was a car in the left lane — pulled to the right shoulder. At the time the tractor-trailer started back into the right lane, it was about 25-30 feet, or the length of the dump truck, in front of Goldston. It turned into M. & S. Co.'s driveway, and the left front of the dump truck collided with the right rear wheels of the trailer in the driveway directly in front of the M. & S. Co.'s building. Both

vehicles at once came to a complete stop. From the time Bost first turned on his right-turn signal, Goldston never saw it go off. It was blinking at the time the accident occurred.

When the highway patrolman arrived at the scene, he found both trucks in the driveway; the tractor-trailer was perpendicular to the highway, and the dump truck was almost parallel to it. Fifty feet of skid marks led from the shoulder of the road to the heavily loaded dump truck. Gravel in the driveway was misplaced to one side, where the dump truck slid into the trailer. Nothing indicated side-swiping damage to the truck.

A witness, Y. A. Puller, who was standing east of the driveway on the premises of M. & S. Co., testified that, when he heard brakes being applied and rocks striking metal, he looked to see the tractor-trailer turning from the highway toward the driveway. The front wheels of the tractor were then 3-4 feet from the edge of the high-way in the right lane, and part of the trailer was in the left lane. The dump truck was turning in the same direction and almost parallel with the tractor-trailer. The left front wheel of the dump truck struck the trailer just forward of its rear wheels.

Joyce W. Saunders, a motorist traveling west on No. 70 in the passing lane, also observed the collision. She testified that after the tractor-trailer passed the dump truck it gave a right-turn signal and returned to the right lane in front of the dump truck; that the right-turn signal never went off, and the tractor-trailer immediately turned into the M. & S. Co. driveway; that, when the two trucks collided, Saunders' car was in the left lane beside the dump truck.

With reference to his damages, plaintiff's evidence tended to show: The cost of putting the truck in "A-1 order" after the collision would have been $1,293.47; the cost of repairing the damage caused by the accident, $991.38. Including the time required to get the parts, 3-4 weeks would have been required to make the repairs, but the work itself could have been done in 1½ weeks. The dump body, the power take-off, and the body hoist were not damaged, and these could have been transferred to another chassis in two days.

Plaintiff had been using the dump truck five days a week to haul gravel from the Nello Teer Quarry near Raleigh to the Research Triangle. In his opinion, the value of the truck immediately before the collision was $2,500.00; immediately after, $1,000.00. He made no effort to buy another truck. He tried to rent a dump truck from Greensboro Ford Company but was unable to obtain one there. The dump truck has not been repaired.

Over defendant's objection and exception, plaintiff testified that after the collision, he hauled ⅓ less gravel each day and that, prior

to the collision, his "approximate net earnings" from the damaged truck had been $50.00 a day. On cross-examination, he conceded that this figure was not based on any cost accounting, and that he had not considered the cost of oil, depreciation, repairs, insurance, or license fees in arriving at the truck's net earnings.

Defendant offered evidence which tends to show: Bost, driving defendant's tractor-trailer westerly passed the dump truck on the crest of a hill about 1500 feet from the point of collision. The dump truck was going about 30 MPH. As he started downgrade, Goldston flashed his lights, "the universal signal used by truck drivers" to inform the operator of the passing vehicle that it is "clear to pull back in." Bost then flipped on his right-turn signal and went back into the right lane at a point approximately 850 feet from M. & S. Co.'s driveway and 700 feet from the crest of the hill on which he had passed the dump truck. Back in the right lane, he turned off his right-turn signal and, "in a very short space of time," he put it on again to indicate a right turn. At that time, he was traveling about 43 MPH. He took his foot off the gas pedal to decelerate, but he did not apply his brakes until he was about 200 feet from the driveway, when his speed was 30-35 MPH. By the time he reached the driveway he had reduced his speed to 5 MPH, and his right-turn signal was still on. When he began to turn into the drive, the dump truck was 200 feet behind him in the right lane. He made a 90° turn, and his vehicle was completely straight in the driveway when he felt a heavy jolt. The dump truck had hit the right-rear wheel of the trailer at a point about 18 feet north of the highway. After the impact, the unit moved about 4 feet "to the left toward the north side" and stopped. As the dump truck left the pavement and went across the 20-foot shoulder into the driveway, it knocked down a highway sign. The tractor-trailer left no pressure marks on the highway. In Bost's opinion, at 45 MPH, the tractor-trailer would require a distance of 265 feet for an emergency stop.

J. C. Jeffries, an independent automotive damage appraiser, who examined plaintiff's 9-year-old dump truck after the collision, testified that, in his opinion, it could not be economically repaired. Repairs would have cost $991.38, and the truck, exclusive of the dump body, was worth only about $300.00 for salvage. There was, however, no damage to the dump body and power hoist, and these could have been easily transferred to another chassis in two-days' time at a cost of only $75.00. To purchase a 1957 Ford truck body on which the dump body could have been installed would have cost about $1,000.00. Subtracting the $300.00-salvage figure, the net cost of this acquisition and transfer would have been about $775.00.

Issues were submitted to the jury and answered as follows: "1. Was the property of the plaintiff damaged by the negligence of the defendant's agent as alleged in the complaint? ANSWER: Yes. 2. If so, did the plaintiff's agent by his negligence contribute to the damages of the plaintiff as alleged in the answer? ANSWER: No. 3. What amount, if any, is the plaintiff entitled to recover of the defendant for damages to his truck? ANSWER: $1,500.00. 4. What amount if any, is the plaintiff entitled to recover by reason of his loss of use of his truck? ANSWER: $1,200.00."

Defendant excepted to the submission of Issue No. 4.

From judgment entered upon the verdict that plaintiff recover of defendant the sum of $2,700.00 and the costs of the action, defendant appealed.

*Boyce, Lake & Burns* for plaintiff appellee.

*Teague, Johnson, Patterson, Dilthey & Clay* for defendant appellant.

SHARP, J. Plaintiff's evidence, viewed in the light most favorable to him, was sufficient to substantiate his allegations that defendant's violation of G.S. 20-154(a) and (b) was the proximate cause of the collision which damaged his dump truck. The evidence would permit the jury to find facts as follows: Proper care would have required Bost, who was familiar with the road and the location of his destination, to remain behind the dump truck instead of passing it so near the drive into which he intended to turn. Notwithstanding, he passed the dump truck and, after signaling his intention to do so, returned to the right lane in front of the truck. Then, with the right-turn signal still blinking — or, after having turned it off and straightway turned it on again —, he immediately made a right turn into the M. & S. Co.'s drive directly in front of the dump truck. Bost should have known (1) that, after having given a right-turn signal to indicate his intention to return to the right lane, a continuation of the signal, or its immediate reactivation, would not inform the driver of the dump truck that he intended to turn off the highway; and (2) that the dump truck was so close behind him that he could not safely make a 90° turn with the tractor-trailer, which was 50-52 feet in length.

Plaintiff's evidence was sufficient to establish defendant's actionable negligence, and it does not compel the conclusion that negligence on the part of Goldston was a proximate cause of the collision. Defendant's motions for nonsuit were therefore properly overruled. 3

Strong, N. C. Index, Negligence § 26 (1960). Its assignment of error No. 11 based thereon is likewise overruled.

Defendant assigns as errors: the submission of the 4th issue, which permitted the jury to award plaintiff damages for loss of use of the dump truck; the court's charge on this issue; and the admission of the evidence tending to show profits lost as a result of his deprivation of the truck. The charge on the 4th issue was as follows:

"Now, as to that issue, members of the jury, I instruct you that lost profits, that is profits lost from the loss of the use of a commercial vehicle, are a proper element of damages where such loss is the direct and necessary result of the defendant's wrongful conduct; and such profits are capable of being shown with a reasonable degree of certainty. Where the profits lost by the defendant's tortious conduct proximately and naturally flow from the defendant's wrongful act and are reasonably definite and certain they are recoverable. Those which are speculative and contingent are not recoverable; and I further instruct you, members of the jury, that it is the duty of the injured party to exercise ordinary care and diligence to avoid or lessen the damage; and for any part of the loss caused by his failure to do so he would not be permitted to recover.

"Now on that issue, you have heard the contentions of the counsel. Counsel have very ably argued to you each one of these issues and I will not go over the contention again.

"But briefly, the plaintiff contends that he lost some $50.00 a day by the loss of use of his truck, and that it would have taken at least some three or four weeks to get it repaired; and he contends that it would take much longer than that. He contends that he is entitled to some substantial amount for the loss of the use of the truck. The defendant, on the other hand, contends that first, you should not reach the issue, but if you do reach it you should not answer it in any substantial amount. The defendant contends that the plaintiff failed to exercise due care to keep the loss down; that the most economical means would have been to either get him a new vehicle or to transfer the one part of the damaged one to another, which could have been done in two days, as the defendant contends; and that it would have been more economical to do it that way. The defendant further contends that the figures given by the plaintiff are speculative and contingent and are not given with a reasonable degree of certainty, and the defendant contends that you ought not to answer that issue in any amount and that if you should answer it in any amount, that you should answer it in some very small amount.

"Now it is a question of fact for you to determine from the evidence as you find the facts to be and I instruct you on that issue

that you will answer it in such amount if any, as the plaintiff has satisfied you by the greater weight of the evidence that he has lost by the loss of use of his truck, as I have explained the law to you on that issue." (This paragraph was not assigned as error.)

Defendant's assignments of error bearing upon the 4th issue require an examination of the rules governing the right to recover damages for the loss of use of a motor vehicle.

When a plaintiff's vehicle is damaged by the negligence of a defendant, the plaintiff is entitled to recover the difference between the fair market value of the vehicle before and after the damage. Evidence of the cost of repairs or estimates thereof are competent to aid the jury in determining that difference. *Simrel v. Meeler,* 238 N.C. 668, 78 S.E. 2d 766; *Guaranty Co. v. Motor Express,* 220 N.C. 721, 18 S.E. 2d 116. When a vehicle is negligently damaged, if it can be economically repaired, the plaintiff will also be entitled to recover such special damages as he has properly pleaded and proven for the loss of its use during the time he was necessarily deprived of it. *Trucking Co. v. Payne,* 233 N.C. 637, 65 S.E. 2d 132. See also *Binder v. Acceptance Corp.,* 222 N.C. 512, 23 S.E. 2d 894. For a comprehensive discussion of the law governing the right of a plaintiff to recover for deprivation of use of a motor vehicle, see 25 C.J.S. Damages § 83c (1966), where the cases are collected. See also 6 Blashfield, Cyclopedia of Automobile Law & Practice §§ 3417-3420 (1945 Text & 1964 Cum. Supp.).

In general, the right to recover for loss of use is limited to situations in which the damage to the vehicle can be repaired at a reasonable cost and within a reasonable time. If the vehicle is totally destroyed as an instrument of conveyance or if, because parts are unavailable or for some other special reason, repairs would be so long delayed as to be improvident, the plaintiff must purchase another vehicle. In this situation, he would be entitled to damages for loss of use only if another vehicle was not immediately obtainable and, in consequence, he suffered loss of earnings during the interval between the accident and the acquisition of another vehicle. The interval would be limited to the period reasonably necessary to acquire the new vehicle. *Colonial Motor C. Corp. v. New York Cent. R. Co.,* 131 Misc. 891, 228 N.Y.S. 508 (Sup. Ct.); 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 1049 (1963).

The fact that an owner, in lieu of repairing a vehicle which could have been economically repaired, "trades it in" on new equipment will not preclude him from recovering damages for loss of its use during the time reasonably required to purchase new equipment or to make the repairs, whichever is shorter. *Glass v. Miller,* 51 N.E. 2d

299 (Ohio App.). See *Hayes Freight Lines v. Tarver,* 148 Ohio St. 82, 73 N.E. 2d 192.

Ordinarily, the measure of damages for loss of use of a business vehicle is not the profits which the owner would have earned from its use during the time he was deprived of it; it is the cost of renting a similar vehicle during a reasonable period for repairs. *Drewes v. Miller,* 25 So. 2d 820 (La. App.); Annots., Damages to Commercial Vehicle, 169 A.L.R. 1074, 1087-1098 (1947), 4 A.L.R. 1350, 1351-1363 (1919). This limitation is an application of the rule that one who seeks to hold another liable for damages must use reasonable diligence to avoid or mitigate them. 2 Strong, N. C. Index, Damages § 8 (1959); Annot., Duty of one suing for damage to vehicle to minimize damages; 55 A.L.R. 2d 936 (1957); *National Dairy Products Corp. v. Jumper,* 241 Miss. 339, 130 So. 2d 922. Thus, before a plaintiff may recover lost profits resulting from the deprivation of his vehicle, he must show (1) that he made a reasonable effort to obtain a substitute vehicle for the time required to repair or replace the damaged one, and (2) that he was unable to obtain one in the area reasonably related to his business. In the absence of such a showing, he may not recover lost profits. *National Dairy Products Corp. v. Jumper, supra; Drewes v. Miller, supra;* 25 C.J.S. *Damages* § 83c (1966). When, however, he has carried the burden of proving that no substitute vehicle could be rented, a plaintiff may recover lost profits if he can establish the amount of the loss with reasonable certainty. See *Smith v. Corsat,* 260 N.C. 92, 131 S.E. 2d 894; *Johnson v. R. R.,* 140 N.C. 574, 53 S.E. 362; 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 1050 (1963). If a plaintiff could have rented a substitute vehicle, the cost of hiring it during the time reasonably necessary to acquire a new one or to repair the old one is the measure of his damage even though no other vehicle was rented. The burden is on the plaintiff to establish the cost of such hire. 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 1047 (1963).

Measured by the foregoing rules, it is apparent that the court's charge on the 4th issue (loss of use) did not meet the requirements of G.S. 1-180. According to plaintiff's evidence, the truck was worth $2,500.00 before the collision, $1,000.00 thereafter, and the damage could have been repaired for $991.38 within 3-4 weeks. Thus, the jury might have found that repairs could have been economically made. Upon this finding, plaintiff would have been entitled to recover as damages for loss of use the reasonable cost of hiring a substitute vehicle during the time required to repair the truck with reasonable promptness. Plaintiff, however, sought only to recover lost profits, and the court permitted him to do this without showing that a sub-

stitute vehicle was unavailable in the area. His statement that he was unable to rent one from Greensboro Ford Company fell far short of proving his inability to hire a similar truck in the Research Triangle area, where he was conducting his hauling operations. Plaintiff likewise offered no evidence tending to show the cost of hiring a substitute vehicle. He made no effort to purchase another truck or to acquire a chassis on which (according to defendant's uncontradicted evidence) he could have mounted the undamaged dump body and power hoist in two days at a cost of $75.00. At the time of the trial, plaintiff still had the wrecked truck and, although twenty months had elapsed since the collision, it had not been repaired.

Thus, plaintiff, who had the burden of proof, laid no foundation to recover either lost profits or the cost of hiring a substitute vehicle for the three or four weeks in which his evidence tended to show repairs could have been made. The court therefore committed prejudicial error (1) in permitting plaintiff to testify that the deprivation of his truck reduced his business by one-third and cost him a net profit of $50.00 a day, and (2) in submitting the 4th issue. Having submitted the issue, he erred in failing to direct the jury to answer it NOTHING. Assignments of error 1, 3, 9, and 18 are sustained.

Since the case goes back for a new trial we also consider assignment No. 14, which points out prejudicial error in the charge on the first issue. Plaintiff's allegations of negligence included, *inter alia,* an averment in the words of G.S. 20-140 that defendant's agent was guilty of reckless driving. Defendant excepted to the following portion of his Honor's charge, which was based upon that allegation:

"Now still another section that I want to call to your attention is a provision of General Statutes 20-140; and one part of that statute provides in substance that any person who drives a vehicle upon a highway without due caution and circumspection and at a speed, or in a manner so as to endanger or be likely to endanger any property, shall be guilty of reckless driving; and a violation of that subsection of the statute would be negligence, and if such negligence were a proximate cause of a collision and damages that would be actionable negligence; that is it would be negligence to drive any vehicle on a highway without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property."

As we pointed out in *Ingle v. Transfer Corp.,* 271 N.C. 276, 283-284, 156 S.E. 2d 265, 271, allegations of reckless driving in the words of G.S. 20-140, without more, do not justify a charge on reckless driving. To plead reckless driving effectively, a party must allege

facts which show that the other was violating specific rules of the road in a *criminally* negligent manner. Since a person is civilly liable for his ordinary negligence, allegations of reckless driving can rarely add anything to the case except an unnecessary hazard — as here demonstrated. Once the judge has given the jury the instructions which the pleadings and evidence require on the law of civil negligence, there is no need for him to superimpose an explanation of the law of criminal negligence. If plaintiff's evidence does not establish civil negligence, *a fortiori,* it will not prove reckless driving, which is criminal negligence. If, however, a party has properly pleaded reckless driving and the judge undertakes to charge upon it, G.S. 1-180 requires him to tell the jury what facts they might find from the evidence would constitute reckless driving. It is not sufficient for the judge to read the statute and then (as he did here) leave it to the jury to apply the law to the facts and to decide for themselves what defendant's driver did, if anything, which constituted reckless driving. Assignment of error No. 14 is also sustained.

We deem it unnecessary to consider defendant's other assignments of error. The questions they pose may not arise in the next trial.

New trial.

LAKE and HUSKINS, JJ., took no part in the consideration or decision of this case.