PAUL E. SPRINKLE AND CARLA JONES (NOW SPRINKLE), PLAINTIFFS V.
N.C. WILDLIFE RESOURCES COMMISSION, DEFENDANT

No. COA03-797

(Filed 17 August 2004)

**1. Damages and Other Remedies— wrecked boat—cost of repair—loss of value before repair**

The Industrial Commission incorrectly calculated damages in a Tort Claims action involving a wrecked boat by adding the loss of resale value before repairs to the cost of repair. There was no evidence that this reflected the before and after value of the boat.

### 2. Damages and Other Remedies— wrecked boat—loss of use—finance payment

The Industrial Commission's Tort Claims award for loss of use of a boat was modified to reflect the minimum finance payments required while the boat was being repaired. Although there was no specific evidence of a similar boat's rental value, the Commission is not precluded from inferring that the boat payment is essentially equivalent to the rental value and thus is a fair measure of loss of use. However, there is no justification for reimbursing plaintiffs for payments in excess of the monthly payment; beyond the minimum finance payment, assessing loss of use is too speculative.

### 3. Costs— attorney fees—Tort Claims action—damages in excess of $10,000—counterclaim by State

The Industrial Commission could not award attorney fees under N.C.G.S. § 6-21.1 in a Tort Claims case where the damages to which plaintiffs were entitled were in excess of $10,000 (even after deducting amounts awarded in error). However, the Commission could award attorney fees under N.C.G.S. § 6-19.1 because the State's counterclaim was equivalent to a civil action and the State did not show substantial justification and that an award of attorney fees would be unjust. The case was remanded for an award for fees arising from the counterclaim.

Appeal by the State from decision and order on 7 January 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 March 2004.

*Parker, Poe, Adams & Bernstein L.L.P., by R. Bruce Thompson II, for plaintiff appellees.*

*Attorney General Roy Cooper, by Special Deputy Attorney General William H. Borden, for the State appellant.*

McCULLOUGH, Judge.

The issues addressed herein are before this Court in the following posture: The claims at issue in this case were brought by Paul Sprinkle and his wife Carla Jones ("plaintiffs" when referred to collectively) under the North Carolina Tort Claims Act, N.C. Gen. Stat. §§ 143-291, *et seq.* (2003). The case was heard before Deputy Commissioner Lorrie L. Dollar of the Industrial Commission on 6 September 2001. Commissioner Dollar filed a decision and order

on 10 May 2002 finding the State liable and awarding plaintiffs $31,007.08 in damages. On 7 January 2003, the Full Commission filed a decision and award affirming the decision of the Deputy Commissioner and additionally awarding attorney's fees. The State filed a notice of appeal on 10 February 2003. The Full Commission filed an amended decision and order on 12 June 2003 denying plaintiffs' motion for attorney's fees. On 7 July 2003, plaintiffs filed a notice of appeal on the amended decision denying plaintiffs' attorney's fees. The decision on that issue in plaintiffs' appeal was also filed on this date, with our decision vacating the amended decision and award. *See Sprinkle v. N.C. Wildlife Resources Comm.*, 165 N.C. App. 902, 600 S.E.2d 483 (2004) (No. COA03-1409) filed the same day as this case.

The following is a summary of relevant facts, as found by the Commission, and not assigned as error by the State: On 9 May 1999, Officer Guedalia of the North Carolina Wildlife Resources Commission (NCWRC) was operating a sixteen-foot boat on High Rock Lake in Rowan County and acting in the course and scope of her employment for the State. There is no speed limit on the lake other than restrictive "No Wake Zones." Fellow Officer Keith Voris was sitting stationary in his own boat facing the opposite direction of Officer Guedalia's boat. The two were in the main channel of the lake, and were discussing stopping two white boats for an inspection. Plaintiffs' boat was one of the white boats being discussed by the stationary officers.

As the two white boats approached the officers, Officer Voris started his patrol boat to pursue the first boat which was operated by a sibling of one of plaintiffs. Plaintiffs' boat was moving at a constant rate of fifty to sixty miles per hour when Officer Guedalia started her boat to pursue plaintiffs at full throttle. Plaintiffs were at a distance of seventy-five feet. Officer Guedalia's boat ran at a top speed of forty-five miles per hour. As Mr. Sprinkle rounded a small island in the channel, he saw a patrol boat and blue lights flashing. He then heard the siren and decreased his speed coming to a quick stop and idling in neutral. Officer Guedalia observed plaintiffs' decreased speed as she approached from the port side of plaintiffs' boat. She claimed plaintiffs' boat moved to the left when she was at a distance of twenty yards and kept moving into her path. Despite seeing the direction plaintiffs' boat was moving, Officer Guedalia turned her boat starboard and slammed her throttle in reverse. The patrol boat then collided with plaintiffs' boat. Plaintiffs' boat sustained extensive

damages. At the time of the collision, claimants' boat had approximately five hours on its engine.

Sergeant Anthony Sharum investigated the accident, preparing a report on 18 May 1999. The report noted that plaintiffs' boat may have moved to the left as the patrol boat collided. The Sergeant testified in his deposition that he found there was no evidence to support plaintiffs' boat turned left in front of the patrol boat. The Sergeant concluded that Officer Guedalia had followed plaintiffs' boat too closely, and that her inattention was the proximate cause of the accident. No citation was issued to Mr. Sprinkle. The Sergeant's report was confirmed by his superiors.

The Commission's findings of fact go on to state that pursuant to the Coast Guard Inland Steering and Sailing Rules, which govern the lake, Officer Guedalia's decision to cut starboard and reverse the throttle was unreasonable. Those rules provide that, when there is sufficient room, alteration of course alone may be the most effective action to avoid close quarters situations. Such would have been the better response in this case as there is no evidence boats were on either side of her. Furthermore, as this was a law enforcement stop, it was Officer Guedalia's duty to maintain a safe distance and speed in case the boat she is stopping suddenly goes right or left. She breached this duty.

Officer Guedalia wrote a memo and testified as to her version of the incident. She alleged Mr. Sprinkle never put his boat in neutral, but was moving forward at all times. She alleged she was never behind Mr. Sprinkle until he cut left over into her path. Commissioner Dollar and the Full Commission did not accept her testimony as credible. They found her version to be illogical because a boat traveling at a maximum of forty-five miles per hour cannot go from a stationary position and catch a speedboat operating at fifty to sixty miles per hour. Furthermore, as the pursuing boat was at a distance of at least seventy-five yards, Officer Guedalia was in the best position to observe any movement to the left by Mr. Sprinkle and stop at an appropriate distance.

Concerning the issue of damages, the Commission found as a fact that plaintiffs owned the boat jointly, having purchased the boat and the trailer for $47,252.00 on 11 February 1999. The monthly payment on the fifteen-year loan used to finance the purchase, including principal and interest, was $444.50. Plaintiffs generally paid more per month, a total ranging from $500.00 to $700.00.

SPRINKLE v. N.C. WILDLIFE RES. COMM'N

[165 N.C. App. 721 (2004)]

On 14 May 1999, plaintiffs took the boat to the dealer who had sold it to them to see if they could trade it in for a new boat. David Natkin, an employee of the dealer, examined the boat. He reported to plaintiffs that the boat was not an acceptable trade-in and was worth $13,500.00 to $15,000.00 less for trade or resale. Plaintiffs took the boat to Campbell's Boat Repair and were quoted a repair cost of $9,507.08. This was the actual price that was charged after the boat was repaired at Campbell's. Until they took the boat in for these repairs, plaintiffs were in possession of the boat and, having taped it up, used it for a couple of trips. The boat was taken into Campbell's in September of 1999, and repairs were not completed until March of 2000.

Based on these undisputed facts, and other evidence before it, the Deputy Commissioner, and the Full Commission on appeal concluded as a matter of law that the State, on the part of individual NCWRC Officer Guedalia, acting in the scope of her employment, was negligent and the proximate cause of the damages to plaintiffs' boat. Both the Deputy Commissioner and the Full Commission concluded plaintiffs were not contributorily negligent, and that even assuming they had been, the State had the last clear chance to avoid the collision. Pursuant to these conclusions, the Full Commission awarded plaintiffs compensatory damages in the amount of $31,007.08 and costs which include plaintiffs' reasonable attorney's fees.

At the outset, we note that while the State sets forth six assignments of error in the record on appeal, those assignments not addressed in its brief are deemed abandoned, pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure. Specifically, the State does not object in its brief to the Commission's finding of the State's negligence, or the finding that plaintiffs were not contributorily negligent. Therefore, the two issues properly before us are: (I) whether the Commission's compensatory award of $31,007.08 was in error; and (II) whether the Commission's award of attorney's fees was in error.

## I. Compensatory Damages

The Full Commission's compensatory award of $31,007.08 was based on the following: cost of repair ($9,507.08), loss of value ($15,000.00), and loss of use for the ten-month period the boat was of limited use or unusable ($6,500.00).

In our standard of review upon an appeal from an Industrial Commission's decision under the Tort Claims Act, our inquiry is limited to two questions: (1) does competent evidence on the record support the Commission's findings; and (2) do the Commission's findings justify its conclusions, decision, and award (if any). *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405, 496 S.E.2d 790, 793 (1998). Findings of fact by the Commission are read with deference, and if supported by competent evidence on the record, are conclusive on appeal even though evidence exists which would support a contrary finding. *Bullman v. Highway Comm.*, 18 N.C. App. 94, 98, 195 S.E.2d 803, 806 (1973). On appeal, the Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Anderson v. Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965).

### A.  COST OF REPAIR and LOSS OF VALUE ON THE UNREPAIRED BOAT

[1] The State put on little to no evidence contesting the cost of repair or loss of value evidence offered by plaintiff. The record indicates, by way of plaintiffs' exhibits, clear and competent documentation to support the Commission's findings as to both of these values. The gravamen of the State's argument is whether the Commission should have awarded both the cost of repair and the loss of value of the unrepaired boat. We agree with the State that the Commission erred in doing so, as this awarded plaintiffs double recovery.

It is well settled that

> North Carolina is committed to the general rule that the measure of damages for injury to personal property is the difference between the market value of the damaged property *immediately before and immediately after the injury*. The purpose of the rule is to pay the owner for his loss. If the damaged article has market value, the application of the before and after rule is relatively simple. Even in that case, however, the cost of repairs is some evidence of the extent of the damage.

*Light Co. v. Paul*, 261 N.C. 710, 710-11, 136 S.E.2d 103, 104 (1964) (emphasis added). Therefore, when measuring compensable damages of personal property, a court or the Commission must be given competent evidence of the difference between the "market value of

the damaged property immediately before and immediately after the injury." *Id.*

As to this value, the Court can consider cost of repair. While the recovery would by no means be limited to the amount of the cost of repairing the damaged property, "we are of the opinion that such cost would be some *evidence* to guide the jury in determining the difference in the market value of the automobile before and after the injury thereto." *Guaranty Co. v. Motor Express*, 220 N.C. 721, 723, 18 S.E.2d 116, 117 (1942) (emphasis added). " 'Evidence of the reasonable value of repairs to a damaged automobile, to show the difference in its value before and after it was injured is admissible.' " *Id.* (quoting *Baldwin v. Mittry*, 102 P.2d 643, 646 (Idaho 1940)). " 'Evidence of the cost of repairs of the automobile was admissible as proof of the difference between the value of the automobile before the accident and after it occurred. This difference was the measure of damages that the plaintiff was entitled to recover.' " *Id.* (quoting *Kiely v. Ragali*, 106 A. 502, 504 (Conn. 1919)). In North Carolina, it is clear the cost of repair can be evidenced by the difference of the before and after value of injured property, but it is not itself the exclusive measure.

The evidence before the Deputy Commissioner and the Full Commission was competent to show the following: the value lost of the boat due to the accident was $15,000.00. Mr. Nankin of Carolina Marina who sold plaintiffs their boat and examined it five days after the injury, stated: "We examined the boat and informed Mr. Sprinkle that we would not accept it as a trade-in because of the damage. . . . I further informed Mr. Sprinkle that, as a result of the accident, the boat was worth $13,500.00 to $15,000.00 less than book value." This was estimated in an invoice and was in the record before the Deputy Commissioner and Full Commission. There was also competent evidence that plaintiff repaired the boat at a cost of $9,507.08 after Carolina Marina's estimate. The Deputy Commissioner and the Full Commission had before it an estimate invoice and a paid invoice of the repairs, each itemized.

Applying the law set out above to this competent evidence for the purpose of determining the loss of value, the measure of damages for injury to the boat should be the difference between the market value of the damaged property *immediately before and immediately after the injury. Light Co.*, 261 N.C. at 711, 136 S.E.2d at 104. The competent evidence of this difference shows that the value of the boat fell below its book value, a boat with only five hours

on its engine, somewhere between $13,500.00 and $15,000.00 due to the injury caused by the State. While it is clear the Deputy Commissioner and the Full Commission could have used the cost of repair as *evidence* of this difference between the before and after injury value, it alone is not the difference, nor is it an additional element of damages.[1]

There is no competent evidence that the loss of resale value of the boat before repair, plus the cost of repair, reflects the difference between the before and after injury value of the boat. Plaintiffs state in their brief that: "the Claimants had to expend almost $10,000.00 in repairs to return the boat to a condition that would be worth $15,000.00 less than book value." If that were the case, we would have no problem affirming the Commission's award. We can find no such evidence in the record. The only evidence on this issue shows that the estimated loss of value as determined by Carolina Marina was based on assessing the lost value of the *damaged* boat, and not the loss of value after the boat was repaired. Thus plaintiff was awarded double recovery: the difference in value before repair, plus the cost of repair.

Therefore, we find no competent evidence on the record that the $9,507.08 cost of repairs represents a part of the difference between the market value of the damaged property immediately before and immediately after the injury and should therefore be removed from the award.

B. *LOSS OF USE*

[2] The State next argues that the Commission had no competent evidence before it to support the loss of use award of $6,500.00. The Commission based this award on the following: that although the minimum monthly loan payment was $444.00, over the ten-month period they were without a boat the claimants generally paid $600.00 to $700.00 a month. The Commission therefore awarded $6,500.00 for loss of use by apparently averaging these payments, and multiplying the average by the ten months the boat was being repaired. We find no competent evidence to support an award of payments beyond those to meet the minimum finance obligation for loss of use.

---

1. There is no factual basis in the record that the value of the repaired boat was any less than the value of the boat before repair. Presumably it was. But we think that by awarding the $5,500.00 difference between the loss of resale value and cost of repair, the $15,000.00 award adequately compensates the loss of the boat's goodwill value (its depreciation after having been in an accident).

A loss of use recovery is generally allowed as to pleasure vehicles. *Martin v. Hare*, 78 N.C. App. 358, 364-65, 337 S.E.2d 632, 636 (1985). Both parties agree that North Carolina's case law governing the special damage award of loss of use of a vehicle is commanded by *Roberts v. Freight Carriers*, 273 N.C. 600, 160 S.E.2d 712 (1968). In *Roberts*, our Supreme Court held:

> In general, the right to recover for loss of use is limited to situations in which the damage to the vehicle can be repaired at a reasonable cost and within a reasonable time. If the vehicle is totally destroyed as an instrument of conveyance or if, because parts are unavailable or for some other special reason, repairs would be so long delayed as to be improvident, the plaintiff must purchase another vehicle.

*Id.* at 606, 160 S.E.2d 712, 717. Following *Roberts*, our Court has held:

> In order to recover for loss of use, it must be possible to repair the damaged vehicle at a reasonable cost and within a reasonable time. The measure of damages to be recovered is the cost *of renting a similar vehicle* during a reasonable time for repairs.

*Gillespie v. Draughn*, 54 N.C. App. 413, 417, 283 S.E.2d 548, 552 (1981), *disc. review denied*, 304 N.C. 726, 288 S.E.2d 805 (1982). As loss of use is a special damage, N.C. Gen. Stat. § 1A-1, Rule 9(g) (2003), the damages must be specifically pled and proved, and the facts giving rise to the special damages must be sufficient to inform the defendant of the scope of plaintiff's demand. *Id.*

In plaintiffs' affidavit of claim to the North Carolina Industrial Commission, they allege:

> Because Mr. Sprinkle and I were not financially able to purchase another boat to replace the one damaged by Officer Guedalia, we were unable to take several trips we had planned this summer, including a boating trip to Charleston, SC on June 4-6, 1999. Our damages for loss of use of the boat since the date of the accident are $14,000.00.

The evidence going towards the loss of use damages was the following: Plaintiffs had planned to take five trips in their new boat during the summer of 1999, and one to Charleston had been scheduled. Plaintiffs attempted to trade their damaged boat for a new boat. They then took the boat in for repairs. The itemized invoice of the repairs showed approximately 150 hours of labor went into repairing the

boat. There is no evidence as to what the cost would have been to rent or finance another boat for the planned trips and the Deputy Commissioner and the Full Commission stated as much in their findings of fact.

We agree with plaintiffs that the facts of this case, as pled in their affidavit of complaint, are sufficient to warrant an award for loss of use. We find the evidence sufficient to show that it was possible to repair the damaged vehicle at a reasonable cost and within a reasonable time. *Roberts*, 273 N.C. at 606, 160 S.E.2d at 717. The evidence shows that plaintiffs did so. While a long time to repair, ten months to do 150 hours of structural work on a boat is competent evidence of "reasonable time" of repair. This is true in light of the fact that much of the work was completed during off-season months. Furthermore, in light of the severe damage caused by the State, the invoice showing the itemized cost of repair is competent to show "reasonable costs."

However, plaintiffs offered no evidence of the measure of damages to be recovered, specifically as to the cost of renting a similar boat for the trips they had planned to take. *Gillespie*, 54 N.C. App. at 417, 283 S.E.2d at 552; *see also Martin*, 78 N.C. App. at 364-65, 337 S.E.2d at 636. The Deputy Commissioner took the evidence of finance payments and drew from these the loss of use for the time the boat was in repair. Plaintiffs cite one case suggesting this as an appropriate measure of loss of use damages. In *Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 406 S.E.2d 856 (1991), our Supreme Court awarded costs of overhead relating to rent and mortgage payments pending the repair of a building. That Court found "plaintiff was unable to operate the business to bring in the money necessary to pay these items yet these expenses accrued despite plaintiff's inability to operate the business." *Id.* at 463, 406 S.E.2d at 866.

We believe there to be no material distinction between allowing mortgage payments on a building and the amount of the boat payments in this case as representative of the value of loss of use. While there is no specific evidence of the costs of a similar boat's rental value as referenced in *Martin* and *Gillespie* as a reasonable measure of loss of use, we do not believe that the Commission is precluded from inferring from the record that a monthly rental value is essentially equivalent to the boat payment and thus fair measure of loss of use.

The State argues that loss of use should be limited to the cost of a boat rental for only those planned trips. This argument is too limited in its scope and does not adequately measure loss of use value. Ownership includes the ability to use the boat whenever desired, whether planned by the date of the accident or not. Plaintiffs were legally obligated to make monthly payments on the boat while it was under repairs caused by the State's negligence. Thus, the boat was unavailable for use on any given day during the repair period and plaintiffs are entitled to reasonable compensation for their inability to use the boat as desired.

Assuming, however, that loss of use and a monthly rental value can be inferred from the amount of the monthly payments, such evidence does not provide any justification for reimbursing plaintiffs for the payments made in excess of the monthly payment. To do otherwise would allow plaintiffs to build equity in an asset at no cost to themselves without any relative measure of the value of that asset as related to its monthly use. It is reasonable to assume that an owner of a pleasure vehicle hopes to get, on average, at least a use value sufficient to justify their minimum monthly finance payments. This is especially true with an asset that depreciates quickly. Beyond that value, however, assessing loss of use value is too speculative.

Accordingly, the Commission's $6,500.00 award for loss of use is modified to award the minimum finance payments of $444.00 per month plaintiffs were required by law to pay while the boat was being repaired. Thus, the loss of use damages should be modified to $4,440.00 to cover those ten months.

## II. Reasonable Attorney's Fees

[3] Though not awarded by the Deputy Commissioner, the Full Commission's final award to plaintiffs was for costs, including plaintiffs' reasonable attorney's fees. The Full Commission's order did not specify under which statute it possessed authority to make such an award. The State assigned this award as error, arguing there was no statutory or other authority for the award of attorney's fees as the Commission's award was over $10,000.00. *See* N.C. Gen. Stat. § 6-21.1 (2003). Plaintiffs argue in their brief that the authority for such an award lies in N.C. Gen. Stat. § 6-19.1 (2003), and there was clear justification for it. We agree with plaintiffs.

### A. N.C. Gen. Stat. § 6-21.1

The Tort Claims Act provides that "[t]he Industrial Commission is authorized . . . to tax the costs against the loser in the same manner

as costs are taxed by the superior court in civil actions." N.C. Gen. Stat. § 143-291.1 (2003). We have held that pursuant thereto, the Commission may award attorney's fees against the State under N.C. Gen. Stat. § 6-21.1. *Karp v. University of North Carolina*, 88 N.C. App. 282, 283, 362 S.E.2d 825, 826 (1987), *aff'd per curiam*, 323 N.C. 473, 373 S.E.2d 430 (1988); *see also Jane Doe 1 v. Swannanoa Valley Youth Dev. Ctr.*, 163 N.C. App. 136, 592 S.E.2d 715 (2004). The facts of *Karp*, though not laid out in any depth in the opinion, related to personal injury of plaintiff.

N.C. Gen. Stat. § 6-21.1 states in relevant part:

> In any personal injury or property damage suit . . . upon a finding by the court that there was an unwarranted refusal by the defendant insurance company to pay the claim which constitutes the basis of such suit, instituted in a court of record, where the judgment for recovery of damages is ten thousand dollars ($10,000) or less, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the litigant obtaining a judgment for damages in said suit, said attorney's fee to be taxed as a part of the court costs.

Under this statute, both determining whether to award attorney's fees and the amount of the attorney's fees is in the considerable discretion of the presiding judge. *Hill v. Jones*, 26 N.C. App. 168, 169, 215 S.E.2d 168, 169, *cert. denied*, 288 N.C. 240, 217 S.E.2d 664 (1975). In the case of a state tort claim, this same discretion lies in the Industrial Commission. *Karp*, 88 N.C. App. at 284, 362 S.E.2d at 826. Pursuant to *Karp*, this statute is clearly applicable to plaintiffs' state tort claims action for personal injury or property damage. However, when the damages being awarded to the prevailing plaintiff exceeds $10,000.00, neither the presiding judge nor the Commission has authority to award attorney's fees. Such is the case at bar.

Even considering those portions of plaintiffs' award we have found in error, plaintiffs are still entitled to $15,000.00 for the loss in value of the boat and $4,440.00 for loss of use. Therefore, pursuant to *Karp* and N.C. Gen. Stat. § 6-21.1, the Commission would be in error to award plaintiffs' attorney's fees pursuant to that statute. However, we do not believe, as the State contends, that this foreclosed plaintiffs from being awarded attorney's fees under N.C. Gen. Stat. § 6-19.1.

*B. N.C. Gen. Stat. § 6-19.1*

Plaintiffs contend that attorney's fees were proper in this case pursuant to N.C. Gen. Stat. § 6-19.1. We agree. This statute states in part:

### § 6-19.1. Attorney's fees to parties appealing or defending against agency decision

In any civil action . . . *brought by the State* or brought by a party who is contesting State action pursuant to G.S. 150B-43 or any other appropriate provisions of law . . . the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees . . . if:

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust. The party shall petition for the attorney's fees within 30 days following final disposition of the case. The petition shall be supported by an affidavit setting forth the basis for the request.

N.C. Gen. Stat. § 6-19.1 (emphasis added). This statute applies to civil actions brought by the State on behalf of an agency, in this case, the NCWRC. The State argues that this statute cannot be the basis for awarding plaintiffs' attorney's fees as plaintiffs initiated this case by filing a claim under the State Tort Claims Act and thereby consented to the jurisdiction of the Industrial Commission to hear and determine any counterclaim. N.C. Gen. Stat. § 143-291.3 (2003). Thus, the State argues, the Commission is without jurisdiction to award attorney's fees in an action outside N.C. Gen. Stat. § 150B and the State Administrative Procedure Act as referenced in N.C. Gen. Stat. § 6-19.1.

Initially, we recognized that the Tort Claims Act must be strictly construed as it stands in derogation of the common law rule of sovereign immunity, *Etheridge v. Graham, Comr. of Agriculture*, 14 N.C. App. 551, 553, 188 S.E.2d 551, 553 (1972), and that the Commission is a court of limited jurisdiction having only those powers conferred upon it by statute. *Bryant v. Dougherty*, 267 N.C. 545, 549, 148 S.E.2d 548, 552 (1966).

The question before this Court is whether a counterclaim by the State in the context of a tort claim is equivalent to "any civil

action . . . brought by the State . . . pursuant to . . . any other appropriate provisions of law" as intended under N.C. Gen. Stat. § 6-19.1. For the reasons set forth herein, we conclude that the counterclaim in this case was the equivalent of a civil action brought by the State. Therefore, the Commission was justified to award attorney's fees under N.C. Gen. Stat. § 6-19.1, as the record does not indicate the State made a showing of substantial justification in bringing their counterclaim, nor did they make a showing of "special circumstances" that awarding attorney's fees in this instance would be "unjust." N.C. Gen. Stat. § 6-19.1; *see Crowell Constructors, Inc. v. State ex rel. Cobey*, 114 N.C. App. 75, 80-81, 440 S.E.2d 848, 851 (1994), *rev'd on other grounds*, 342 N.C. 838, 467 S.E.2d 675 (1996).

In the instant case, the State's counterclaim alleged the following:

#### FOURTH DEFENSE AND FIRST COUNTERCLAIM

If plaintiff Jones is allowed to recover, defendant is entitled to indemnity from plaintiff Sprinkle. His negligence as detailed in the third defense above was active and primary. In the alternative, the defendant is entitled to contribution from plaintiff Sprinkle because his negligence was a proximate cause of this accident.

#### SECOND COUNTERCLAIM

Plaintiff Sprinkle was negligent for the reasons stated in the third defense above. His negligence was the sole proximate cause of the accident which is the subject of this claim. Due to plaintiff's actions, defendant's boat suffered approximately $500.00 in damage and its employee was injured. It paid Officer Guedalia approximately $430.00 in statutory salary continuation while she was out on injury leave due to the accident and paid her medical expenses of approximately $1148.35 as self-insured employer under the Workers' Compensation Act. As a result of plaintiff's negligence, defendant suffered damages of at least $2,078.35.

Defendant respectfully requests that plaintiffs' claim be denied, and that plaintiffs be ordered to pay damages and the costs of this action.

As a threshold matter, we here show this counterclaim brought by the State in the Industrial Commission is a "civil action" under N.C. Gen. Stat. § 6-19.1.

Rule 1 of the North Carolina Rules of Civil Procedure states in relevant part: "[The Rules of Civil Procedure] shall also govern the

procedure in tort actions brought before the Industrial Commission except when differing procedure is prescribed by statute." N.C. Gen. Stat. § 1A-1, Rule 1. Rule 2 goes on to state, "[t]here shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action." N.C. Gen. Stat. § 1A-1, Rule 2. Under Rule 7, counterclaims require a responsive pleading as if they themselves were the impetus of the civil action. N.C. Gen. Stat. § 1A-1, Rule 7(a). However, if the counterclaim is in actuality nothing more than an affirmative defense, such as contributory negligence, no reply is required. *Eubanks v. First Protection Life Ins. Co.*, 44 N.C. App. 224, 229, 261 S.E.2d 28, 31 (1979), *disc. reviews denied*, 299 N.C. 735, 267 S.E.2d 661 (1980); *see* N.C. Gen. Stat. § 1A-1, Rule 8(c) (Here, the State counterclaimed for damages in the same manner as did plaintiff, requiring a responsive pleading.).

Finally, Rule 13 provides:

(a) *Compulsory counterclaims.*—A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

N.C. Gen. Stat. § 1A-1, Rule 13(a). Thus, if the State wished to assert its counterclaim, it was compulsory that it do so in the present proceedings as its claim arises out of the same transaction or occurrence. A counterclaim is in the nature of an independent proceeding and is not automatically determined by a ruling in the principle claim. *Brooks, Com'r of Labor v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984). Thus, the filing of a counterclaim is to initiate a "civil action" as denominated in Rule 2.

While the State's counterclaim was compulsory, it was within its discretion to assert it. And, unless the State's assertion was substantially justified or there is some showing of special circumstances that make awarding attorney's fees unjust, any civil action it brings is subject to such fees pursuant to N.C. Gen. Stat. § 6-19.1. As the purpose of this statute is to curb unwarranted, ill-supported suits asserted by the State, it was within the Commission's discretion to award attorney's fees. *Crowell Constructors*, 114 N.C. App. at

80-81, 440 S.E.2d at 851. We review an award for attorney's fees under the abuse of discretion standard. *Tay v. Flaherty*, 100 N.C. App. 51, 57, 394 S.E.2d 217, 220, *disc. review denied*, 327 N.C. 643, 399 S.E.2d 132 (1990). We cannot say, under the facts of this case, that the approach taken by the Commission was a clear abuse of its discretion. There is no showing in the findings of fact made by the Full Commission as to any substantial justification for the State's counterclaim in this case. The record shows after the investigation of the incident, the NCWRC all but acknowledged their officer's negligence. The investigation finding the officer was at fault was confirmed by the investigating Sergeant's superiors, and plaintiffs were not cited for the incident.

Therefore, we remand this case to the Industrial Commission for clear findings as to the amount of attorney's fees owed by the State. *Thornburg v. Consolidated Jud'l Ret. Sys. of N.C.*, 137 N.C. App. 150, 154, 527 S.E.2d 351, 354 (2000). The award should be tailored to compensate only for those fees which arose specifically from the State's counterclaim. This should not include fees encompassing the entire tort claim brought by plaintiffs.

### III. Conclusion

Pursuant to the analysis set forth above, we affirm the Industrial Commission's conclusions of law that the State was negligent and that plaintiffs in no way contributed to the State's negligence. However, we modify the Commission's award to exclude the $9,507.08 for the cost of repair, as it would be double recovery when awarding $15,000.00 for loss of value. Furthermore, we modify the Commission's award for loss of use, reducing it from $6,500.00 to $4,440.00. And finally, we remand the case to the Commission to make clear calculations of attorney's fees incurred by plaintiffs in response to the State's counterclaim.

Affirmed in part, modified in part, and remanded in part.

Judges WYNN and ELMORE concur.