IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-260
No. COA15-517

Filed: 10 May 2016

Watauga County, No. 12 CVS 287

TOWN OF BEECH MOUNTAIN, Plaintiff,

v.

GENESIS WILDLIFE SANCTUARY, INC., Defendant.

Appeal by plaintiff from orders entered 30 October 2013 and 5 September 2014 by Judges Mark E. Powell and Gary M. Gavenus, respectively, and from judgment and orders entered 29 September 2014, 27 October 2014, and 24 November 2014 by Judge J. Thomas Davis in Watauga County Superior Court. Heard in the Court of Appeals 4 November 2015.

> *Eggers, Eggers, Eggers, & Eggers, PLLC, by Stacy C. Eggers, IV; and Cranfill Sumner & Hartzog, LLP, by Patrick H. Flanagan and Meagan I. Kiser, for plaintiff-appellant.*
>
> *Wake Forest University School of Law Appellate Advocacy Clinic, by John J. Korzen; and Clement Law Office, by Charles E. Clement and Charles A. Brady, III, for defendant-appellee.*

GEER, Judge.

Plaintiff, the Town of Beech Mountain (the "Town"), filed two appeals arising out of a lawsuit the Town brought against defendant Genesis Wildlife Sanctuary, Inc. ("Genesis") for summary ejectment. We have consolidated the appeals for hearing and decision. On appeal, the Town first argues that the trial court erroneously granted Genesis summary judgment on the Town's summary ejectment claim. Based

on our review of the record, we agree with the trial court that there is no genuine issue of material fact as to whether Genesis breached its lease.

The Town further argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict ("JNOV") on Genesis' counterclaim, which alleged that a buffer zone passed as part of the Town's Buckeye Lake Protection Ordinance ("Ordinance"), as applied to Genesis, violated Genesis' substantive due process rights. Because Genesis presented substantial evidence that § 93.21(F) of the Ordinance was arbitrary and capricious as applied to Genesis, given that § 93.21(F) was designed and enforced in a manner intended to preclude Genesis from operating as a wildlife sanctuary, the trial court properly allowed the case to go to the jury. Because we also find the Town's additional arguments unpersuasive, we hold that the Town received a trial free of prejudicial error.

Facts

On 20 October 1999, the Town entered into a 30-year lease agreement with Genesis (the "Lease") for a 0.84 acre tract of land located adjacent to Buckeye Lake in Watauga County, North Carolina. Genesis, a non-profit organization incorporated for the purposes of wildlife rehabilitation and education, entered into the Lease with the Town with the express intent to house animals on the property. The Lease specifically provided, consistent with Genesis' intent: "The use of the Leased Premises is restricted to the construction, operation and maintenance of an education center

that educates the general public as to how people and wildlife may peacefully co-exist. It is understood and agreed to by the parties that the Lessee may from time to time house wildlife upon the premises[.]"

Over the years from 2000 to 2006, in accordance with the Lease, Genesis built several structures on the property. A larger one, known as the "Dome," was used as an office, a residential area for volunteers, and an animal display area. Genesis also built several animal habitats on the property, including caging and fencing. Relations with the Town during this time were good, and Genesis was very successful in attracting visitors -- predominantly school groups -- from across the state, and even enthusiasts from as far away as Germany.

Starting in 2008, however, the Town became interested in using Buckeye Lake for recreational purposes, and it contacted the Department of Environment and Natural Resources ("DENR") to learn whether Buckeye Lake could be used for such purposes. Buckeye Lake serves as the Town's drinking water source and is therefore classified by DENR as a Class I reservoir subject to numerous statewide laws and regulations. At the end of 2008, Tom Boyd, Environmental Senior Specialist of the Public Water Supply Section of DENR who had visited Buckeye Lake and Genesis' property, encouraged the Town to draft a municipal ordinance for the purposes of protecting Buckeye Lake as a public drinking source in accordance with section .1200 of the DENR's Rules Governing Public Water Supplies.

In a letter dated 18 December 2008, Boyd informed the Town he had visited Genesis' site in October 2008 and found one of its animal cages was in danger of contaminating a stream that fed into Buckeye Lake by animal waste runoff. Boyd also noted that Genesis had informed him it was planning to relocate the animal cages to a different location and maintain the tract of land for educational purposes. At this time, Genesis was in the process of moving at least some of its operations to a location known as Eagle's Nest in Banner Elk, North Carolina.

After two Town Council meetings in early 2009, the Town adopted the Buckeye Lake Protection Ordinance on 10 February 2009. In one section of the ordinance, § 93.21(F), the Town provided: "No animals can be caged or housed within 200 feet of Buckeye Lake, or within 2,000[1] feet of any stream that drains into Buckeye Lake." During the two Town Council meetings, Mayor Rick Owen and the Town Council members, when deciding on the 200-foot buffer, specifically emphasized that the 200-foot distance would cover all the structures on Genesis' property and even bar animals housed inside. Mayor Owen unambiguously stated that the intent of the Ordinance was to "eliminate [Genesis'] ability to have animals and continue to have animals at [the Buckeye Lake] facility."

---

[1]A copy of the Ordinance in the record on appeal states "2,000 feet." However, other sources from the record, particularly the Town Council minutes, suggest the Town intended this number to be 200 feet. The distinction is not directly relevant to the issues on appeal.

The Town did not inform Genesis it had passed the Ordinance. Genesis, in May 2009, partially moved its operations to the Eagle's Nest location. However, Genesis' time at Eagle's Nest was short-lived. As a result of the lack of sewer and water at Eagle's Nest, and the bankruptcy of its financier, Genesis began moving the animals back to the Buckeye Lake location within a matter of months.

Before and after the Town passed the Ordinance, the Town experienced problems with sewage overflow from a lift station it owned and operated that was located in close proximity to Buckeye Lake. In fact, since as early as 2004 and on numerous different occasions, several hundred thousand gallons of sewage overflowed from this lift station into Buckeye Lake. Specifically, on 14 January 2010, the Town received a notice of violation from DENR employee Steve Tedder, indicating a sewage overflow of 147,000 gallons relating to two different incidents in December 2009.

On 24 August 2010, the Town received notification from DENR that the department had discovered pathogenic bacteria in Buckeye Lake, potentially threatening its use as a water supply. The notification also indicated that DENR believed Genesis' operation at Buckeye Lake was "in violation of the town of Beech Mountain's Buckeye Lake use Ordinance" and that "the town may be in violation of 15A NCAC 18C .1201(a) and .1202."

On 15 September 2010, the Town informed Genesis by letter that all outdoor animals and habitats, with the exception of one used for storage, had to be removed from the property within six months pursuant to a plan to comply with applicable state water safety codes. The letter threatened legal action if Genesis failed to comply.

In addition to this letter, the Town verbally enforced the terms of the Ordinance, informing Genesis that it not only had to remove all outside animals, but also had to remove all animals and cages housed inside the Dome structure. The Town falsely represented to Genesis that DENR and the State required the removal of animals and cages from the entirety of Genesis' Buckeye Lake site, including animals and cages entirely indoors. Under the threat of legal action from the State and the Town, Genesis removed all animals and cages from its Buckeye Lake facility, causing significant damage to the Dome's aesthetic structure and requiring significant effort and cost to move Genesis' operations to a new location known as "Fireweed," owned by Genesis' former president and founder, Leslie Hayhurst. Upon the relocation to Fireweed, Genesis was not permitted by the Town to host large groups as it had at Buckeye Lake, and it struggled to find a use for the Dome as it was contemplated in the Lease. Hayhurst later discovered that the Town's threats that the State would take action if they did not remove all the animals were unfounded.

On 28 March 2012, notwithstanding Genesis' efforts to comply with § 93.21(F) of the Ordinance, Genesis received a letter from the Town attorney claiming that Genesis was in breach of the Lease because, the Town claimed, (1) Genesis was using the property for purposes which violate the law and (2) Genesis was failing to "make all arrangements for repairs necessary to keep the Premises in good condition." Subsequently, the Town filed a summary ejectment action on 23 April 2012 and obtained a judgment of ejectment on 10 May 2012.

Genesis appealed to district court, moved to transfer the action to superior court, and filed multiple counterclaims, including a § 1983 claim that the Town had violated Genesis' substantive due process rights.[2] The Town and Genesis each filed motions for summary judgment on all the parties' claims and counterclaims. Genesis also filed a request for a declaratory judgment that the Ordinance be classified a zoning ordinance -- the trial court entered the requested declaratory judgment on 30 October 2013.

On 5 September 2014, the trial court granted Genesis' motion for summary judgment on the Town's breach of lease claim and also granted summary judgment in favor of the Town on Genesis' counterclaim for unfair and deceptive trade practices.

---

[2]After amendments to its pleadings on 8 January 2013, Genesis asserted counterclaims for violation of its substantive due process rights, breach of lease, two counts of inverse condemnation, unfair and deceptive trade practices, a Fifth Amendment takings claim, violation of Genesis' procedural due process rights, and violations of Article I, Section 10 ("Contracts" Clause) and Section 9 ("Bill of Attainder") of the United States Constitution.

Genesis voluntarily dismissed its counterclaim for violation of Article I, Section 9 of the United States Constitution. On 1 October 2014, the Town appealed the order granting Genesis' motion for summary judgment on the Town's breach of lease claim. This appeal was docketed as No. COA15-260.

Genesis' remaining counterclaims were tried on 15 September 2014. At the close of Genesis' evidence, the Town moved for a directed verdict, which the trial court granted with respect to Genesis' counterclaims asserting a Fifth Amendment taking, violation of procedural due process rights, and violation of the Contracts Clause of the United States Constitution. In addition, Genesis voluntarily dismissed its inverse condemnation and breach of lease counterclaims. The trial court denied the motion for a directed verdict with respect to Genesis' counterclaim alleging a violation of its substantive due process rights.

At the close of the Town's evidence, the Town again moved for directed verdict on the remaining substantive due process claim, which the trial court denied. The trial court then instructed the jury and commenced deliberations. During a break in the deliberations, a conversation among three jurors and a court bailiff was overheard in the courthouse stairwell concerning animal waste and trash in a lake. Once brought to the trial judge's attention, he questioned each of the jurors and invited the attorneys to ask their own questions, although none did. The jurors each indicated

they could be fair and impartial. The Town moved for a mistrial, which the trial court denied, finding that the conversation did not prejudice the trial.

On 23 September 2014, the jury returned a verdict in favor of Genesis finding that the Town violated Genesis' substantive due process rights with its establishment and enforcement of § 93.21(F) of the Buckeye Lake Protection Ordinance. The jury awarded Genesis damages in the amount of $211,142.10. The trial court entered judgment on 29 September 2014 in the amount of $211,142.10 and included a declaration that the Ordinance was unconstitutional as applied to Genesis. Subsequently, the Town filed a joint motion for JNOV, to amend the verdict, and for a new trial on 3 October 2014. The trial court denied the motion on 27 October 2014. After entry of a final judgment awarding Genesis costs and attorney's fees, the Town timely appealed to this Court, resulting in the second appeal in this case, No. COA15-517.

Discussion

I.    Breach of Lease

The Town first appeals from the order entered by Judge Gary M. Gavenus on 5 September 2014, granting Genesis summary judgment on the Town's breach of lease claim. As an initial matter, we note that appeal No. COA15-260 was interlocutory on the date of filing because the order from which the Town appealed was "made during the pendency of an action" and did not dispose of the case. *Veazey*

*v. City of Durham,* 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). At the time the Town filed this appeal, this Court lacked jurisdiction to hear the appeal because it was an improper interlocutory appeal. *See id.* at 364, 57 S.E.2d at 382-83.

However, final judgment has since been entered in this case, and the appeal is no longer interlocutory. Although we have not located any other case involving these precise circumstances, *Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 665 S.E.2d 526 (2008), is analogous. In *Goodman*, this Court refused to dismiss an appeal from an interlocutory order granting partial summary judgment after the remaining claims pending in the superior court were voluntarily dismissed. *Id.* at 471-72, 665 S.E.2d at 530. As we acknowledged in *Goodman* in language equally applicable here, "any rationale for dismissing the appeal as interlocutory fails." *Id.* at 472, 665 S.E.2d at 530. We, therefore, deem appeal No. COA15-260 properly before this Court, and we address the merits.

The Town contends the trial court erred in granting summary judgment to Genesis on the Town's breach of lease claim because there are genuine issues of material fact regarding whether Genesis breached its Lease with the Town. "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re*

*Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

"North Carolina's General Statutes allow for summary ejectment '[w]hen the tenant or lessee . . . has done or omitted any act by which, according to the stipulations of the lease, his estate has ceased.' " *GRE Properties Thomasville LLC v. Libertywood Nursing Ctr., Inc.*, ___ N.C. App. ___, ___, 761 S.E.2d 676, 681 (quoting N.C. Gen. Stat. § 42-46(a)(2) (2013)), *appeal dismissed and disc. review denied*, 367 N.C. 796, 766 S.E.2d 659 (2014). We note, however, that "[o]ur courts do not look with favor on lease forfeitures." *Stanley v. Harvey*, 90 N.C. App. 535, 539, 369 S.E.2d 382, 385 (1988). Furthermore, "[u]se restrictions in leases . . . will be construed against the landlord[,]" and "must be explicit and unambiguous." *Alchemy Commc'ns Corp. v. Preston Dev. Co.*, 148 N.C. App. 219, 225, 558 S.E.2d 231, 235 (2002). When a term is not defined in a lease, "it should be given its natural and ordinary meaning." *Charlotte Hous. Auth. v. Fleming*, 123 N.C. App. 511, 514, 473 S.E.2d 373, 375 (1996).

The Town first argues that genuine issues of fact remain whether Genesis violated the Lease's "Use of Property" clause by violating four Town ordinances that required Genesis to (1) screen fuel tanks on the leased property, (2) control accumulation of waste on the leased property, (3) comply with setback requirements, and (4) comply with watershed buffer requirements. The Lease's "Use of Property" clause provides: "[T]he Lessee shall not use or knowingly permit any part of the

Leased Premises to be used for any purpose which violates any law." The Town argues that Genesis' alleged violations of the ordinances are violations of "any law" and, therefore, amount to a breach of the "Use of Property" clause of the Lease.

Although Genesis argues that summary judgment was proper because the Town failed to present evidence that it violated the ordinances, we do not need to reach that issue. Reading the "Use of Property" clause in accordance with its "natural and ordinary meaning," as required by *Charlotte Housing Authority*, *id.*, the plain language of the clause only prohibits Genesis from *using* the leased property *for an illegal purpose.* Thus, even if the Town could show that Genesis had violated the ordinances, it still would not have shown that Genesis' purpose in using the property was illegal. Indeed, it is undisputed that Genesis has used the property for the purpose of constructing, operating, and maintaining a wildlife refuge and educational center, which not only is a purpose that does not violate any law, but also is the precise use authorized by the Lease. Accordingly, there are no genuine issues of material fact regarding whether Genesis was in breach of the Lease by violating the "Use of Property" clause.

The dissent contends that we "read[] the Lease provision far too narrowly." This argument and the dissent's construction of the provision, which construes the "Use of Property" clause in the light most favorable to the Town, run counter to the mandate in *Alchemy Commc'ns Corp.*, 148 N.C. App. at 225, 558 S.E.2d at 235, that

use restrictions in leases "will be construed against the landlord" and "must be explicit and unambiguous." While the Lease provides that Genesis "shall not use . . . any part of the Leased Premises . . . for *any purpose* which violates any law" (emphasis added), the dissent would amend the provision to read that Genesis "shall not use . . . any part of the Leased Premises . . . *in any way* which violates any law." The dissent cites no authority that authorizes such a broad construction of a lease in favor of a landlord seeking to eject its tenant. At a minimum, the dissent shows that the "Use of Property" clause is not explicit and unambiguous and, therefore, cannot be a basis for ejecting Genesis.

The Town also asserts genuine issues of fact remain regarding whether Genesis breached the "Repairs" clause, which required Genesis to "make all arrangements for repairs necessary to keep the Leased Premises in good condition. This includes repairs for any and all damage caused by the Lessee, its agents and/or its invitees." In the event of Genesis' default, and its subsequent failure to cure the default within 10 days of notice of its default, the Town had the option of terminating the Lease.

In support of this argument, the Town relies on pictures it claims were taken by Town Manager Randy Feierabend on 11 April 2012 and attached to his affidavit, showing natural and artificial debris on the leased premises. The Town claims that Genesis had not removed this debris as of 31 May 2012. The Town, therefore, argues

that Genesis was in breach of the "Repairs" clause and the Lease because it failed to remedy the debris within 10 days of notice from the Town.

Genesis argues that after the Town complained of this debris in a 29 March 2012 letter, Genesis' president, Leslie Hayhurst, replied in a 2 April 2012 letter that defendant was in "an on-going effort to 'clean up' in and around the remaining structures and to recondition and refurbish" the property. The letter further indicated that this cleanup effort could only be completed once the animals were removed from the property, as the Town had demanded, and once the weather permitted. Genesis presented uncontroverted evidence that winter storms had produced tree damage and debris and that as of February 2012 -- well before the Town had even provided notice of the potential default -- Genesis was actively engaged in removing the debris with help from volunteers.

Following the principle in *Stanley* that we "do not look with favor on lease forfeitures," 90 N.C. App. at 539, 369 S.E.2d at 385, and giving the "Repairs" and default clauses their plain and ordinary meaning, we hold that the Town has not shown that there is an issue of fact regarding whether Genesis, as required by the Repairs clause, had made "all arrangements for repairs necessary to keep the Premises in good condition" within 10 days after the Town gave notice of the need for action. The Town has not presented any basis for concluding that the Lease required

that Genesis complete its cleanup efforts 10 days after receiving notice of the debris from the Town in its 29 March 2012 letter.

Moreover, while the Town asserts on appeal that Genesis still had not remedied the violation by 31 May 2012, the Town can point to no evidence supporting that claim. Finally, while the Town Manager claimed that the photos on which the Town has relied almost entirely for proving breach of the Repairs clause were taken on 11 April 2012, Genesis has made a compelling showing that the Town Manager's statement regarding the date of the photos was untrue and that the photos were actually taken in March. Whether the date of the photos is true or not is, however, immaterial since the Town failed to show that Genesis had not, in violation of the Lease, made the necessary arrangements to keep the property in good condition.

Accordingly, we agree with the trial court that the Town has failed to show that a genuine issue of material fact exists as to whether Genesis breached the Lease. The trial court, therefore, properly granted summary judgment on the Town's claims of breach of the Lease.

II. <u>Admission of Evidence at Trial of Town's Sewage Spills</u>

The Town next challenges the trial court's admission at trial of evidence of sewage spills into Buckeye Lake coming from the Town's lift station and the corresponding notices of violation that the Town received from DENR for the sewage overflows. The Town argues this evidence was both irrelevant and unfairly

prejudicial and that the trial court not only erred in admitting the evidence, but also should have granted the Town's motion for a new trial based on the admission of that evidence. We disagree.

The Town points to the testimony of Susan Halliburton, a former Genesis board member and Town resident, about the sewage overflows and notices of violation from the State. The Town objected generally to the testimony on the grounds of relevancy. In overruling the Town's objections based on relevancy, the trial court noted, "But they have to show that that was arbitrary, capricious and all that. And if you're totally polluting this lake another way . . . doesn't that add to the absurdity of the 200-foot buffer?"

However, two other witnesses also testified about the sewage overflows, without objection, including Steve Tedder, a former DENR water quality supervisor. Mr. Tedder testified that thousands of gallons of "human waste" flowed into Buckeye Lake and that he personally signed and sent to the Town "a notice of violation for two different spills" in 2010 for "a total of 147,000 gallons of human waste going into Buckeye Lake."

It is well established that "[h]aving once allowed this evidence to come in without objection, the [Town] waived [its] objections to the evidence and lost the benefit of later objections to the same evidence." *State v. Burnett*, 39 N.C. App. 605, 610, 251 S.E.2d 717, 720 (1979). Thus, even if the evidence of the Town's

contamination of the lake with human waste was irrelevant or unfairly prejudicial, the Town failed to preserve this error for appeal. *See also Lowery v. Newton*, 52 N.C. App. 234, 242, 278 S.E.2d 566, 572 (1981) ("Assuming such testimony was hearsay and unresponsive, it is harmless in view of the fact that the record discloses that similar testimony occurs elsewhere.").

Moreover, when a party has moved for a new trial pursuant to Rule 59(a)(8) of the Rules of Civil Procedure, a new trial may be granted where there is an "[e]rror in law occurring at the trial *and objected to by the party making the motion*[.]" (Emphasis added.) Because the Town did not object to each admission of evidence of the sewage overflow, this issue has not been properly preserved and any error in denying the motion for a new trial because of the admission of Ms. Halliburton's testimony would be harmless. *See Borg-Warner Acceptance Corp. v. Johnston*, 107 N.C. App. 174, 183, 419 S.E.2d 195, 200 (1992) (rejecting as unpreserved challenge to denial of motion for new trial based on admission of evidence that appellant had not objected to at trial).

Regardless, it is a general principal that "[e]vidence is relevant if it has any logical tendency to prove a fact at issue in a case[.]" *State v. Arnold*, 284 N.C. 41, 47, 199 S.E.2d 423, 427 (1973). "It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly

understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact." *Id.* at 47-48, 199 S.E.2d at 427.

The trial court concluded, and we agree, that evidence of the Town's sewage overflows is relevant to whether the Town's Buckeye Lake Ordinance was arbitrary and capricious, a fact Genesis was required to prove for its substantive due process claim. More specifically, in accordance with *Arnold*, evidence that the Town's own negligence was causing the contamination in Buckeye Lake speaks to the Town's "conduct or motives" and the "general circumstances surrounding the parties" in adopting a 200-foot buffer zone preventing the caging and housing of animals. *Id.* In other words, it raises questions of fact whether the 200-foot buffer zone designed to eliminate the presence of all animals -- indoors and out -- at the Genesis wildlife refuge would have any appreciable effect on Buckeye Lake's water quality when the Town itself was the source of more than 100,000 gallons of sewage spilling into the lake during the time frame of the adoption of the buffer. This evidence questions the purpose of the buffer zone, which speaks to whether § 93.21(F) of the Ordinance was arbitrary or capricious. Thus, we hold that the trial court did not err in admitting the evidence as relevant.

The Town also argues that the prejudice outweighed any benefit of admission of the evidence, apparently an argument for exclusion under Rule 403 of the Rules of Evidence, although the Town does not cite Rule 403. Nonetheless, the Town failed to

object to the evidence on this basis at trial and, therefore, did not preserve this issue for appeal. *State v. Hueto*, 195 N.C. App. 67, 71, 671 S.E.2d 62, 65 (2009).

III.    Denial of Motions for Directed Verdict and JNOV

The Town next challenges the denial of its motions for a directed verdict and JNOV pursuant to Rule 50 of the Rules of Civil Procedure. " 'The standard of review of the denial of a motion for a directed verdict and of the denial of a motion for JNOV are identical. We must determine whether, upon examination of all the evidence in the light most favorable to the non-moving party, and that party being given the benefit of every reasonable inference drawn therefrom and resolving all conflicts of any evidence in favor of the non-movant, the evidence is sufficient to be submitted to the jury.' " *Springs v. City of Charlotte*, 209 N.C. App. 271, 274-75, 704 S.E.2d 319, 322-23 (2011) (quoting *Shelton v. Steelcase, Inc.,* 197 N.C. App. 404, 410, 677 S.E.2d 485, 491 (2009)). " 'A motion for either a directed verdict or JNOV should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim.' " *Id.* at 275, 704 S.E.2d at 323 (quoting *Shelton,* 197 N.C. App. at 410, 677 S.E.2d at 491).

A.    Preclusion of Claims Brought Under 42 U.S.C. § 1983

First, the Town argues that Genesis was precluded from bringing a § 1983 claim for violation of its substantive due process rights because it had an adequate post-deprivation state law remedy of inverse condemnation. As the United States

Supreme Court has explained, there are three variations of claims brought under the

Due Process Clause of the Fourteenth Amendment:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights. . . . [*E.*]*g.*, freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. A plaintiff . . . may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights.*
>
> The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.

*Zinermon v. Burch*, 494 U.S. 113, 125-26, 108 L. Ed. 2d 100, 113-14, 110 S. Ct. 975,

983 (1990) (emphasis added) (internal citations and quotation marks omitted)).

Thus, for substantive due process claims, " '[i]t is no answer that the State has

a law which if enforced would give relief. The federal remedy is supplementary to the

state remedy, and the latter need not be first sought and refused before the federal

one is invoked.' " *Id.* at 124, 108 L. Ed. 2d at 113, 110 S. Ct. at 982 (quoting *Monroe*

*v. Pape,* 365 U.S. 167, 183, 5 L. Ed. 2d 492, 503, 81 S. Ct. 473, 482 (1961), *overruled*

*on other grounds by Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)).

While we are first and foremost bound by this decision of the United States Supreme Court, *Pender Cnty. v. Bartlett*, 361 N.C. 491, 516, 649 S.E.2d 364, 380 (2007), *aff'd*, 556 U.S. 1, 173 L. Ed. 2d 173, 129 S. Ct. 1231 (2009), our Supreme Court has also reached the same conclusion in *Edward Valves, Inc. v. Wake Cnty.*, 343 N.C. 426, 434, 471 S.E.2d 342, 347 (1996), where it held specifically that "[s]tate remedies are only relevant when a Section 1983 action is brought for a violation of procedural due process." This Court has recently held the same. *See Swan Beach Corolla, L.L.C. v. Cnty. of Currituck*, 234 N.C. App. 617, 629, 760 S.E.2d 302, 312 (2014) ("While [§ 1983] claims for violation of procedural due process may be subject to exhaustion requirements, substantive constitutional claims are not[.]" (internal citation omitted)).

Despite this precedent, the Town claims that as a matter of law, Genesis is precluded from bringing this claim because North Carolina's inverse condemnation statutes provide an adequate remedy. In asserting this position, the Town cites to numerous federal cases. However, even apart from *Zinermon*, we are required to follow the precedents established in *Edward Valves* and *Swan Beach Corolla*. Accordingly, we hold Genesis' substantive due process claim is not barred by Genesis' ability to bring an inverse condemnation action.

B.    As-Applied Substantive Due Process Violations

Secondly, the Town contends that the adoption and enforcement of § 93.21(F) of the Ordinance did not violate Genesis' substantive due process rights because the Ordinance was not an arbitrary and capricious exercise of its municipal police power and was, therefore, rationally related to the legitimate government interest in protecting the Town's water supply. In making this argument, the Town fails to recognize that Genesis brought an "as applied" claim rather than attacking the facial validity of the Ordinance.

" 'In general, substantive due process protects the public from government action that [1] unreasonably deprives them of [2] a liberty or property interest.' " *Amward Homes, Inc. v. Town of Cary*, 206 N.C. App. 38, 63, 698 S.E.2d 404, 422 (2010) (quoting *Toomer v. Garrett,* 155 N.C. App. 462, 469, 574 S.E.2d 76, 84 (2002)), *aff'd per curiam*, 365 N.C. 305, 716 S.E.2d 849 (2011). "[S]ubstantive due process denotes a standard of reasonableness and limits a state's exercise of its police power. . . . 'The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective.' " *Beneficial N.C., Inc. v. State ex rel. N.C. State Banking Comm'n*, 126 N.C. App. 117, 127, 484 S.E.2d 808, 814 (1997) (quoting *In re Petition of Kermit Smith,* 82 N.C. App. 107, 111, 345 S.E.2d 423, 425-26 (1986)).

In arguing that its motion for a directed verdict and motion for JNOV should have been granted, the Town relies upon the principles that unless a municipal ordinance is clearly prohibited by the Constitution, appellate courts presume it is constitutional and, quoting *Patmore v. Town of Chapel Hill*, 233 N.C. App. 133, 140, 757 S.E.2d 302, 306 (quoting *Graham v. City of Raleigh*, 55 N.C. App. 107, 110, 284 S.E.2d 742, 744 (1981)), *disc. rev. denied sub nom. Patmore v. Town of Chapel Hill*, 367 N.C. 519, 758 S.E.2d 874 (2014), that " '[w]hen the most that can be said against [zoning] ordinances is that whether it was an unreasonable, arbitrary or unequal exercise of power is fairly debatable, the courts will not interfere.' " The Town asserts that "a constitutional violation *exists only* when the challenged governmental action does *not bear a rational relationship to a legitimate governmental objective*." (Emphasis original.)

In making this argument, the Town has addressed only a facial challenge to an ordinance. However, there is a difference between a challenge to the facial validity of an ordinance as opposed to a challenge to the ordinance as applied to a specific party. "The basic distinction is that an as-applied challenge represents a plaintiff's protest against how a statute was applied in the particular context in which plaintiff acted or proposed to act, while a facial challenge represents a plaintiff's contention that a statute is incapable of constitutional application in any context." *Frye v. City of Kannapolis*, 109 F. Supp. 2d 436, 439 (M.D.N.C. 1999). "In an as-applied case, the

plaintiff is contending that the defendant municipal agency violated his or her constitutional rights in the manner in which an ordinance was applied to his or her property." *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 256 (E.D. Pa. 2007). "[O]nly in as-applied challenges are facts surrounding the plaintiff's particular circumstances relevant." *Frye*, 109 F. Supp. 2d at 439.

We have found no prior North Carolina precedent addressing an as-applied substantive due process claim under circumstances similar to those here. However, the Fourth Circuit has held that "[t]o establish a violation of substantive due process, [a plaintiff] must demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008) (internal quotation marks omitted). "And in the context of a zoning action involving property, it must be clear that the state's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' " *Id.* (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88, 72 L. Ed. 842, 844, 48 S. Ct. 447, 448 (1928)). Further, "[i]n making this determination we may consider, among other factors, whether: (1) the zoning decision is tainted with fundamental procedural irregularity; (2) the action is

targeted at a single party; and (3) the action deviates from or is inconsistent with regular practice." *Id.*

With particular emphasis on the second factor, it is clear that "government actors cannot single out a particular individual or entity for disparate treatment based on illegitimate, political or personal motives." *Browning-Ferris Indus. of S. Atl., Inc. v. Wake Cnty.*, 905 F. Supp. 312, 321 (E.D.N.C. 1995). *See also Marks v. City of Chesapeake, Va.*, 883 F.2d 308, 311 (4th Cir. 1989) (" 'Such purposeful discrimination against a particular individual . . . violate[s] the Constitution *even where no recognized class-based or invidious discrimination was involved.*' " (quoting *Scott v. Greenville Cnty.*, 716 F.2d 1409, 1420 (4th Cir. 1983)); *Scott,* 716 F.2d at 1420 (holding plaintiff presented sufficient evidence of due process violation when "it appear[ed] that the moratorium was directed solely" at plaintiff because municipal agency's "moratorium on building permits was limited to the area in which [plaintiff] proposed to build, and that his was the only application pending in that area"); *Doctor John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005, 1035 (N.D. Iowa 2006) (holding evidence that city "systematically targeted [plaintiff] for exclusion and has amended its ordinances for that purpose" sufficient "to generate genuine issues of material fact" regarding due process claim).

The Town's arguments at trial and on appeal focus on its contention that the Ordinance's prohibition of caged and housed animals within 200-feet of Buckeye Lake

or any stream that drains into it was rationally related to the legitimate interest of protecting the Town's water supply. Specifically, the Town contends that it adopted § 93.21(F) of the Ordinance in response to pressure from DENR to comply with Title 15A, Chapter 18 of the North Carolina Administrative Code, which requires, among other things, that "[p]recautions shall be taken on the watershed of class I and class II reservoirs . . . to control the drainage of wastes from animal and poultry pens or lots, into such sources." 15A N.C. Admin. Code 18C.1208 (2014). The Town further argues that the eventual adoption of the 200-foot buffer zone was reasonable given the expert testimony of Lee Spencer, a former Regional Engineer of the Public Water Supply Section of DENR, who testified that 200 feet was a common buffer distance for other drinking water reservoirs in the state.

These arguments, found persuasive by the dissent as well, focus, however, on the facial validity of the Ordinance and do not address the "facts surrounding the plaintiff's particular circumstances," *Frye*, 109 F. Supp. 2d at 439, whether the Town's actions in adopting and enforcing the Ordinance lacked a substantial relationship to its interest in protecting the Town's water supply, or whether these actions "singl[ed] out [Genesis] for disparate treatment based on illegitimate, political or personal motives." *Browning-Ferris Indus.*, 905 F. Supp. at 321. Indeed, the Town acknowledges, referencing a letter dated 18 December 2008 from Tom Boyd, "it is clear that the Town's enactment of Section 93.21(f) was in response to NCDENR's

actual notice to the Town that the conditions at Genesis 'could be a serious health concern and needs to be addressed.' "

The dissent, however, expands on the Town's arguments and asserts that Genesis' evidence that the Town targeted it when adopting and enforcing § 93.21(F) cannot, in any event, give rise to an as-applied substantive due process claim.  In support of this position, however, the dissent relies on First Amendment decisions, which apply an analysis that has no relevance to a substantive due process claim.

Each of the First Amendment decisions cited by the dissent addresses the issue whether the challenged statute or ordinance was content based or content neutral and held that when the legislation was valid on its face -- in other words, was facially content neutral -- mere allegations or hypotheses of a content-based motive for the legislation would not be sufficient to trigger strict scrutiny of the legislation under the First Amendment.

These decisions arising in the specialized context of the First Amendment are immaterial to the issues in this case.  *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645, 652, 129 L. Ed. 2d 497, 520, 524, 114 S. Ct. 2445, 2461, 2464 (1994) (while noting that "even a regulation neutral on its face may be content based if its manifest purpose is to regulate speech because of the message it conveys[,]" nevertheless holding that "[a]ppellants' ability to *hypothesize* a content-based purpose for these provisions *rests on little more than speculation* and does not cast doubt upon the

content-neutral character of" challenged regulations (emphasis added)); *United States v. O'Brien*, 391 U.S. 367, 382-83, 20 L. Ed. 2d 672, 683, 88 S. Ct. 1673, 1682 (1968) (concluding that legislation regulated conduct and was content neutral with respect to speech and rejecting defendant's claim that Congress still had "purpose" of suppressing speech because "an otherwise constitutional statute" will not be struck down "on the basis of an *alleged* illicit legislative motive" (emphasis added)); *D.G. Rest. Corp. v. City of Myrtle Beach*, 953 F.2d 140, 146, 147 (4th Cir. 1991) (holding that because "the record discloses no evidence to support a conclusion that [the communicative] message [of nude dancing] was the target of the Myrtle Beach ordinance[,]" ordinance was content neutral "valid time, place, and manner restriction" for purposes of First Amendment); *Cricket Store 17, LLC v. City of Columbia*, 97 F. Supp. 3d 737, 745, 746 (D.S.C. 2015) (holding that ordinances restricting where sexually-oriented business can be located are valid, content neutral "time, place, and manner regulations" for First Amendment purposes and evidence that adoption of ordinance was "spurred" by opening of sexually-oriented business "is not controlling, as this does not demonstrate that a ban on [plaintiff's] erotic message was a motive for the ordinances").[3]

---

[3]The dissent also mistakenly relies on *Waste Indus. USA, Inc. v. State*, 220 N.C. App. 163, 725 S.E.2d 875 (2012), a case addressing discrimination under the Commerce Clause, and asserts that this Court held that a buffer and size restriction "for landfills was constitutional even though *the purpose* of the legislation may have been to prevent a particular company from constructing certain landfills near our coast." This Court actually held that "we have concluded that plaintiffs *failed to present*

Under the applicable substantive due process analytical framework set out in *MLC*, in order to decide whether the Ordinance is an arbitrary or irrational exercise of power having no true substantial relation " 'to the public health, the public morals, the public safety or the public welfare in its proper sense[,]' " 532 F.3d at 281 (quoting *Nectow*, 277 U.S. at 187-88, 72 L. Ed. at 844, 48 S. Ct. at 448), we first look at whether "the zoning decision is tainted with fundamental procedural irregularity[.]" *Id.* On this factor, Mr. Spencer, the Town's expert witness formerly employed by DENR, testified that before a buffer is applied to an individual's property, science should be "applied in some fashion" to determine the proper distance for that buffer and that a municipality should not pass an ordinance without consulting the only property owner it will affect.

Genesis presented evidence that the buffer was not based on science or even a recommendation by DENR. Although the Town argues that it adopted the Ordinance in response to pressure from DENR, both of the Town's witnesses admitted that DENR never specifically required a 200-foot buffer. The Town Council meeting minutes for 13 January 2009 and 10 February 2009 evidenced how the Town in fact came up with the 200-foot buffer.

The discussion at the 13 January meeting progressed from simply preventing caging of animals in Buckeye Creek's floodplain to preventing it within 200 feet of

---

*evidence* giving rise to an issue of fact regarding the purpose of the legislation" being to prevent the construction of the particular landfills. *Id.* at 180, 725 S.E.2d at 887 (emphasis added).

the lake or any stream that feeds into Buckeye Lake, which was admittedly "more stringent." The minutes reveal that the rationale for this "more stringent" 200-foot requirement was solely an intent to "eliminate [Genesis'] ability to have animals and continue to have animals at that facility." Indeed, in discussing the size of the buffer, one Town council member pointed out, "I don't think 100 feet will [go beyond Genesis' buildings], but I think 200 feet will."

In addition, contrary to the proper procedure identified by Mr. Spencer, the Town did not consult with Genesis, the property owner that was the target of this part of § 93.21(F), prior to adopting the Ordinance. In fact, Genesis presented evidence that the Town did not even notify Genesis of the passage of the Ordinance. Instead, on 15 September 2010, more than a year after the passage of the Ordinance, the Town informed Genesis by letter that all outdoor animals and habitats, with the exception of one used for storage, had to be removed from the property within six months pursuant to a plan to comply with applicable *state water safety codes*. The letter threatened legal action if Genesis failed to comply. The Town then, orally, falsely represented to Genesis that DENR required the removal of animals and cages from the entirety of Genesis' Buckeye Lake site, including animals and cages entirely inside, and that the State would take legal action if Genesis failed to comply.

Thus, Genesis presented evidence meeting the first *MLC* factor. Contrary to proper procedure for the adoption of this kind of Ordinance, as established by the

Town's own expert, the Town did not base its 200-foot buffer on any kind of science, but rather chose the buffer because it was the distance necessary to eliminate Genesis' ability to function consistent with the purposes set out in its Lease with the Town. Further, the Town did not consult with Genesis prior to adopting the Ordinance, even though this aspect of the Ordinance was directed at the property Genesis leased from the Town.

Genesis also presented substantial evidence regarding the second *MLC* factor: § 93.21(F) of the Ordinance provision was targeted at a single party, Genesis. In addition to the evidence relevant to the first factor, at the 10 February 2010 Town meeting, Mayor Owen stated: "There is one item that we were in particular wanting to be sure it was worded properly, and it's a reference to animals, caging and housing of animals around Buckeye Lake . . . . It will have an effect on Genesis Wildlife." In addition, the former Town attorney, David Paletta, in explaining the use of the word "housed" in the Ordinance's requirement that "[n]o animals can be caged or housed within" the buffer, reflected that Genesis was the target of that provision: "Well, basically what I'm trying to do, is I understand the Council is concerned about some caging of animals that the Council would like to get rid of . . . ."

Genesis likewise presented substantial evidence relating to the third *MLC* factor: the action deviates from or is inconsistent with regular practice. In this case, this factor overlaps with the first factor. In addition to evidence that the Town in fact

arbitrarily selected a 200-foot buffer in order to ensure removal of all of Genesis' facilities for animals, the Town's utilities director, Robert Heaton, indicated that the Town had not performed any investigation or study in creating the 200-foot buffer, and he could not provide any rationale as to why the Town adopted that specific buffer distance or why it had included "housed" animals. Mr. Heaton also acknowledged that the animals housed inside Genesis' Dome did not create a danger to Buckeye Lake.

Even though, as Genesis' evidence showed, the Town told Genesis that DENR was threatening legal action unless all of Genesis' animals were removed from the Buckeye Lake facility, Mr. Spencer testified that DENR's only concern with Genesis' operation was a "wolf habitat" that "should be removed" if Genesis were to stay at its Buckeye Lake site. Neither of the Town's two witnesses -- the only testimony it presented -- provided any explanation how the prohibition of "housed" animals was reasonable or related to the Town's interest in protecting the Town's drinking water when the only concern was with Genesis' open air cages "located in close proximity to a small branch that discharges into [Buckeye Lake]."

In sum, Genesis presented evidence supporting the existence of each of the *MLC* factors. In *MLC*, the Fourth Circuit concluded that comparable evidence was "sufficient to survive summary judgment" on the property owner's substantive due process claim. 532 F.3d at 282. When the evidence was taken in the light most

favorable to the property owner -- which was precluded from building a car dealership when the defendant town rezoned its property -- the court concluded that the evidence "satisfie[d] all three relevant factors." *Id.* The evidence showed that "the zoning decision was procedurally irregular in that it occurred without any reference to the comprehensive plan; [the property owner] was singled out for treatment; and the zoning was made without any studies and at the behest of a citizen petition, the first such petition in the Town since at least 1989." *Id.* In addition, apart from the three factors, "the record evidence at least suggests that citizenry opposition was based not upon legitimate land use issues but upon dislike of car dealerships. Statements such as '[l]ipstick on a pig does not change the nature of the beast,' . . . do not relate to legitimate land use concern but rather to the very arbitrary exercise of power the due process clause is intended to protect against." *Id.*

Likewise, here, in addition to evidence addressing the three *MLC* factors, Genesis also presented other evidence that would allow a jury to conclude that the adoption of the Ordinance did not relate to a legitimate concern with the safety of the Town's water supply. Leslie Hayhurst and Susan Halliburton testified that the Town began enforcing the Ordinance in the fall of 2010 with the false threat of legal action from the State. This evidence in particular raises questions of fact whether the Town's motives in passing this Ordinance were truly to protect the Town's drinking water or simply to interfere with Genesis' interest in its leased property. Such

improper motives were the basis for the trial court granting summary judgment in favor of the plaintiff's substantive due process claim in *Browning-Ferris*, 905 F. Supp. at 321.

In addition, evidence of the Town's own sewage problems and its manner of enforcing § 93.21(F) of the Ordinance also raises issues of fact regarding the Town's improper motives in adopting an ordinance directed solely at Genesis. As we have noted above, Ms. Halliburton and Mr. Tedder testified extensively about the Town's sewage overflows. This evidence is particularly relevant here because if the Town was responsible for much of the contaminants in Buckeye Lake, and was receiving pressure from DENR to ameliorate those problems, then a jury could conclude that the motivation behind § 93.21(F), directed at removal of Genesis' facility, was not for the purpose of maintaining drinking water safety.

In sum, the evidence presented at trial was sufficient to create genuine issues of fact whether the motives of the Town and the purposes behind the 200-foot buffer -- that prohibited both outdoor and indoor animals -- were related to the legitimate interest of protecting the Town's water supply or were to prevent Genesis from using their property for the purposes set forth in their 30-year Lease with the Town. Accordingly, we hold the trial court's denial of the Town's motions for directed verdict and JNOV were not in error.

IV. <u>The Town's Motion for New Trial based on Jury Misconduct</u>

The Town next argues the trial court erred in denying the Town's motion for a new trial pursuant to Rule 59 of the Rules of Civil Procedure based on jury misconduct. During a break in jury deliberations, three jurors and a court bailiff discussed in the courthouse hallway, generally, the harms of animal waste in bodies of water. The bailiff knew one of the jurors personally and also knew that he was a juror. After the trial judge was informed of this potential impropriety, he individually questioned each juror and the bailiff regarding the conversation. The trial judge learned that the conversation related to a juror's distress on learning of the pollution in Buckeye Lake because he had been eating fish from the lake his entire life. The bailiff suggested to the juror that the risk of animal waste in a small body of water was not significant because he grew up on a dairy farm and knew of someone who consumed fish from a stream on his property adjacent to livestock.

At the conclusion of the trial judge's questioning of each involved juror, the jurors each affirmed to the judge that they could be fair and impartial despite this conversation. Although attorneys from both sides were given the opportunity to also question each juror, no attorney did so. Ultimately, the trial court found that "the subject matter is of such a nature that it does not directly relate to the issues in which the jury is considering for purposes of deliberation in this matter" and that "[a]s a result thereof, . . . the conversation does not prejudice the trial in any respects, does

not have any affect [sic] on the jurors and their ability to be fair and impartial in their deliberations in this matter[.]"

"When juror misconduct is alleged, it is the trial court's responsibility 'to make such investigations as may be appropriate, including examination of jurors when warranted, to determine whether misconduct has occurred and, if so, whether such conduct has resulted in prejudice to the [aggrieved party].' " *State v. Salentine*, ___ N.C. App. ___, ___, 763 S.E.2d 800, 804 (2014) (quoting *State v. Aldridge,* 139 N.C. App. 706, 712, 534 S.E.2d 629, 634 (2000)), *disc. review denied*, ___ N.C. ___, 771 S.E.2d 308 (2015). "On appeal, we give great weight to [the trial court's] determinations whether juror misconduct has occurred and, if so, whether to declare a mistrial. Its decision should only be overturned where the error is so serious that it substantially and irreparably prejudiced the defendant, making a fair and impartial verdict impossible." *Id.* at ___, 763 S.E.2d at 804 (internal citation and quotation marks omitted).

The Town argues that this Court *is required* to apply a seven-factor test in analyzing whether juror misconduct creates a prejudicial effect on a party requiring a new trial pursuant to the Supreme Court's decision in *Stone v. Griffin Baking Co. of Greensboro, Inc.*, 257 N.C. 103, 107-08, 125 S.E.2d 363, 366 (1962). Some of these factors include whether the non-juror had any relationship to the jurors, whether the non-juror knew of a juror's status as a juror, whether the conversation referenced the

case, whether there was any intent to influence the jurors, and whether there was any prejudicial influence. *Id.* Although these factors may be relevant to the overall inquiry, we do not agree with the Town's contention that our Supreme Court mandated such a seven-factor test in *Stone.* In the years since *Stone,* our Supreme Court has never suggested that *Stone* created such a test. *See, e.g., State v. Sneeden*, 274 N.C. 498, 504, 164 S.E.2d 190, 195 (1968) (noting that *Stone* adopted general rule: " '[N]either the common law nor statutes contemplate as ground for a new trial a conversation between a juror and a third person unless it is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial. The matter is one resting largely within the discretion of the trial judge.' " (quoting 39 Am. Jur., *New Trial*, § 101)).

We hold, under the standard set out in *Salentine*, that the trial judge took the appropriate actions to investigate the conversation between the jurors and bailiff. Furthermore, we find his questions generally addressed the concerns noted in *Stone.* The trial judge received an assurance from each juror that they were not prejudiced by the conversation with the bailiff, allowed each party's attorneys to question the jurors, and explained orally that the conversation regarding sewage in bodies of water did not directly relate to or influence the jury's deliberations. Because we find the conversation did not affect "the fairness of the trial or the integrity of the verdict[,]"

the trial judge did not abuse his discretion in refusing to grant a mistrial. *Sneeden*, 274 N.C. at 505, 164 S.E.2d at 195.

## V.    Motion to Amend the Verdict

The Town next argues that the trial court erred by denying the Town's motion to amend the jury verdict pursuant to Rule 59 because (1) the jury awarded Genesis a double recovery for both repair and replacement damages and (2) the amount awarded was in excess of any actual damages proven at trial. We disagree.

### A.    Double Recovery

It is a general principle that " '[t]he measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money.' " *Coley v. Champion Home Builders Co.*, 162 N.C. App. 163, 166, 590 S.E.2d 20, 22 (2004) (quoting *Bernard v. Cent. Carolina Truck Sales*, 68 N.C. App. 228, 233, 314 S.E.2d 582, 585 (1984)). "North Carolina is committed to the general rule that the measure of damages for injury to personal property is the difference between the market value of the damaged property immediately before and immediately after the injury. . . . [T]he cost of repairs is some evidence of the extent of the damage." *Carolina Power & Light Co. v. Paul*, 261 N.C. 710, 710-11, 136 S.E.2d 103, 104 (1964).

The Town argues the costs to rebuild the cages at the Buckeye Lake location duplicated the costs to reestablish Genesis' operations at the Fireweed location and, therefore, Genesis should not be placed in a better position than before the alleged harm. The Town cites to *Sprinkle v. N.C. Wildlife Res. Comm'n*, 165 N.C. App. 721, 728, 600 S.E.2d 473, 478 (2004), for the proposition that a claimant cannot receive double recovery for "the difference in value before repair, plus the cost of repair." We find this case is inapposite to the facts here.

In *Sprinkle*, this Court found the owner of a damaged boat was precluded from recovering two different measures of value for the same property. *Id.* To the contrary, here, the evidence shows separate and distinct costs to Genesis resulting from the Town's arbitrary and capricious actions: (1) the costs to reconstruct animal cages at the Fireweed location when required by the Town to relocate the animals, and (2) further costs to restore Genesis' operations at the Buckeye Lake location after Genesis was allowed to return the animals to the original location.

Ms. Halliburton testified to these different costs. She explained that Genesis incurred costs in the amount of approximately $171,000.00 to move the animals and its operations to the Fireweed location, where it would not be able to operate and maintain "an education center" in the same manner that it had at the Buckeye Lake location pursuant to the terms of the Lease. Specifically, Ms. Halliburton stated, "Fireweed was not officially Genesis, but it was more or less our little satellite

hospital. . . . [T]he town stipulated we could not have the public there as Genesis." Thus, the Town's arbitrary and capricious enforcement and enactment of the Ordinance prevented Genesis from operating as provided under the terms of the Lease.

Ms. Halliburton further testified to costs in the amount of $14,373.84 incurred in repairing the damage to the Dome at the Buckeye Lake location resulting from the Town's enforcement of the Ordinance. She claimed that in an attempt to make the Dome location an educational center, as was required by the terms of the Lease, Genesis had to repair a "pretty sad" interior resulting from Genesis having "to tear out the cages that were inside" pursuant to the Town's mandate.

Finally, David Shook, the contractor who quoted Genesis the cost of materials needed to restore the animal cages at its Buckeye Lake site and thus to restore Genesis' property interest pursuant to the Lease, testified to costs of approximately $91,000.00. Thus, Genesis incurred different damages as a result of different effects produced by the Town's enactment and enforcement of the Ordinance. Accordingly, the trial court did not err in denying the Town's Rule 59 motion to amend the amount of damages on account of a double recovery.

### B. Proof of Actual Damages

We next examine the Town's argument that the trial court abused its discretion in denying the Town's motion for an amended verdict because the jury's

award exceeded actual damages proven at trial. "The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty. While the claiming party must present relevant data providing a basis for a reasonable estimate, proof to an absolute mathematical certainty is not required." *State Props., LLC v. Ray*, 155 N.C. App. 65, 76, 574 S.E.2d 180, 188 (2002) (internal citation omitted). Furthermore, where "it is unclear exactly how the jury reached its overall figure," the trial court does not abuse its discretion in denying a motion to amend the verdict if "the jury's verdict was consistent with [the claimant's] evidence[.]" *Blakeley v. Town of Taylortown*, 233 N.C. App. 441, 449, 756 S.E.2d 878, 884, *disc. review denied*, 367 N.C. 521, 762 S.E.2d 208 (2014).

Here, although it is unclear exactly how the jury reached a verdict of $211,142.10, there is no indication that this amount is inconsistent with the evidence presented at trial. Ms. Halliburton and Mr. Shook testified to damages totaling $276,824.92, which Genesis provided to the jury in a spreadsheet. Although the Town did not present any evidence to challenge the damages presented on these spreadsheets, cross-examination of Ms. Halliburton revealed that the labor costs on the spreadsheet were from unpaid volunteers and that a number of other costs on the spreadsheet resulted from donations. These amounts totaled just over $65,000.00. A simple subtraction of the volunteered labor and material in the approximate amount

of $65,000.00 from the $276,824.92 in total damages reveals an amount consistent with the jury's verdict of $211,142.10. Thus, even though we cannot be sure exactly how the jury calculated its verdict, or that the verdict was calculated with mathematical certainty, we find the verdict is consistent with the evidence presented by Genesis. Therefore, the trial court did not abuse its discretion in denying the Town's motion to amend the jury verdict.

VI.    Declaratory Judgments

As a final matter, the Town argues that the trial court erred by entering a declaratory judgment (1) that the Town of Beech Mountain Ordinance § 93.21(F) was unconstitutional and (2) that the Ordinance was a zoning ordinance. We disagree with both contentions.

A.    Declaration of the Constitutionality of the Town Ordinance

The Town first claims the declaratory judgment that the Ordinance was unconstitutional was in error because the Town's amendment of the Buckeye Lake Protection Ordinance and corresponding removal of § 93.21(F), the specifically challenged provision, rendered the request for a declaratory judgment moot. The Town argues that the amendment eliminated the trial court's subject matter jurisdiction to enter such an order. We do not agree.

"The purpose of the Declaratory Judgment Act is, 'to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal

relations[,]' [and] is to be liberally construed and administered." *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964) (quoting *Walker v. Phelps*, 202 N.C. 344, 349, 162 S.E. 727, 729 (1932)). It is well settled that "[t]he Superior Court has jurisdiction to render a declaratory judgment only when the pleadings and evidence disclose the existence of a genuine controversy between the parties to the action, arising out of conflicting contentions as to their respective legal rights and liabilities under a[n] . . . ordinance . . . ." *Id.*, 134 S.E.2d at 656-57. As a general matter, our Supreme Court has acknowledged that "[o]nce the jurisdiction of a court . . . attaches, . . . it will not be ousted by subsequent events." *In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978).

The Town points out that "[w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law." *Id.* at 147, 250 S.E.2d at 912. Such is not the case here. Upon modification and elimination of § 93.21(F) in January 2013, Genesis had already incurred monetary damages resulting from the Town's enactment and enforcement of the Ordinance. Thus, the January 2013 modification of the Buckeye Lake Protection Ordinance and the elimination of § 93.21(F) did not provide Genesis with

the relief it sought and did not alter the fact that the Ordinance was unconstitutional as applied to Genesis prior to its amendment.

In arguing the issue was moot, the Town also relies on *State v. McCluney*, 280 N.C. 404, 407, 185 S.E.2d 870, 872 (1972), which holds that "repeal of [a statute] renders moot the question of its constitutionality . . . ." However, that principle does not apply here as the Supreme Court has specifically limited the application of this rule to criminal statutes. *Id.* We also find that the Town's reliance on *City of Raleigh v. Norfolk S. Ry. Co.*, 275 N.C. 454, 464, 168 S.E.2d 389, 396 (1969), is misplaced because, as the Supreme Court acknowledged, "[t]he very crux of [that] appeal lies in the construction of a *proposed* ordinance which the city *has not enacted*. . . . [Thus,] [n]o wrong has resulted to either party . . . ." (Second emphasis added.) Because § 93.21(F) was enacted, *City of Raleigh* is inapplicable to this dispute.

Here, the Town enacted § 93.21(F) of the Buckeye Lake Ordinance and enforced it against Genesis before the Ordinance was later amended and § 93.21(F) revised. The jury found that this section of the Ordinance, as originally applied to Genesis, resulted in a violation of Genesis' substantive due process rights at the time it was adopted and enforced. Therefore, pursuant to *Roberts*, 261 N.C. at 287, 134 S.E.2d at 656, the Ordinance presented a "genuine controversy between" Genesis and the Town, and the trial court had the requisite jurisdiction to declare § 93.21(F) unconstitutional as applied to Genesis.

B.      Declaration of the Ordinance as a "Zoning" Ordinance

The Town next claims that the trial court's declaration that § 93.21(F) is a "zoning" ordinance adopted pursuant to N.C. Gen. Stat. § 160A-381(a) (2015), as opposed to an ordinance derived from the Town's police power pursuant to N.C. Gen. Stat. § 160A-174 (2015), was in error.  The Town argues that the Ordinance "cannot be classified as a zoning ordinance because [the] Ordinance simply does not 'zone', but instead, seeks to prevent adverse effects on public water supply quality."  We do not agree.

N.C. Gen. Stat. § 160A-381(a) states:

> For the purpose of promoting health, safety, morals, or the general welfare of the community, any city may adopt zoning and development regulation ordinances.  These ordinances may be adopted as part of a unified development ordinance *or as a separate ordinance. A zoning ordinance may regulate and restrict . . . the location and use of buildings, structures and land.*

(Emphasis added).

"Zoning laws, when valid, *are an exercise of the police power* of the sovereign reasonably to regulate or restrict the use of private property . . . ."  *Zopfi v. City of Wilmington*, 273 N.C. 430, 433, 160 S.E.2d 325, 330 (1968) (emphasis added).  This general concept, and the plain language of N.C. Gen. Stat. § 160A-381(a) undercut the Town's argument that any ordinance adopted for the purpose of preventing adverse effects on the public water supply, pursuant to the Town's police power,

cannot be a zoning ordinance. Zoning ordinances are specifically adopted for the promotion of the health and general welfare of the community.

Lastly, it is evident that our Supreme Court has traditionally considered "buffer" ordinances, such as the one at issue here, zoning ordinances. *See, e.g.*, *Armstrong v. McInnis*, 264 N.C. 616, 629, 142 S.E.2d 670, 679 (1965). Because the Town cites no case law supporting its argument that we invalidate the trial court's declaration of the Buckeye Lake Protection Ordinance as a zoning ordinance, and because we find the purpose and scope of the Ordinance to be in accord with N.C. Gen. Stat. § 160A-381(a), we find no error.

## Conclusion

In conclusion, we affirm the trial court's grant of summary judgment to Genesis on the Town's breach of lease claim. Further, we hold that the trial court did not err in denying the Town's motions for directed verdict and JNOV on Genesis' substantive due process counterclaim. We also hold that the Town has failed to demonstrate that the trial court erred in denying its motion for a new trial or amended verdict. Finally, we hold that trial court properly entered its declaratory judgments.

AFFIRMED AS TO COA15-260; NO ERROR AS TO COA15-517.

Judge HUNTER, JR. concurs.

Judge DILLON dissents in a separate opinion.

No. COA15-260 and No. COA15-517 – TOWN OF BEECH MOUNTAIN V. GENESIS WILDLIFE SANCTUARY, INC.

DILLON, Judge, dissenting.

I believe that the trial court erred in denying the Town's motions for directed verdict and JNOV regarding Genesis' substantive due process claim. Further, I believe that the trial court erred in granting summary judgment in favor of Genesis on the Town's breach of Lease claim. Accordingly, I respectfully dissent.

I. Genesis' Substantive Due Process Claim

In 1999, the Town entered into an agreement (the "Lease") to lease to Genesis certain property (the "Property") in close proximity to Buckeye Lake. Buckeye Lake is the source of the Town's drinking water. Genesis uses the property to maintain a wildlife refuge.

In 2009, the Town enacted an ordinance (the "Ordinance") prohibiting the housing of animals within 200 feet of Buckeye Lake or of any stream that drains into Buckeye Lake. This Ordinance severely affects Genesis' ability to operate its wildlife refuge on the Property. There is evidence that some Town officials were motivated in passing the Ordinance by a desire of forcing Genesis to move its operation to another site.

I believe that the Town's enactment of the Ordinance *may* give rise to certain causes of action in favor of Genesis, e.g., an inverse condemnation claim[4] and a breach of contract claim for breach of Lease's implied covenant of good faith and fair dealing[5]. However, I do not believe that the Town's passage of the Ordinance gives rise to a substantive due process claim; and the trial court should have granted the Town's motions for directed verdict and JNOV on these claims.

Here, Genesis' substantive due process claim must fail, whether the challenge is *facial* or *as applied* in nature. *See Richardson v. Township of Brady*, 218 F.3d 508, 513 (6th Cir. 2000). ("A zoning ordinance may be challenged as violative of substantive due process either on its face or as applied to a particular parcel of land"). The difference between a *facial* challenge and an *as applied* challenge is as follows:

> When one makes a "facial" challenge, he or she argues that *any* application of the ordinance is unconstitutional.. He or she must show that, on its face, the ordinance is arbitrary, capricious, or not rationally related to a legitimate government interest.
> When one makes an "as applied" challenge, he or she is attacking only the decision that applied the ordinance to his or her property, not the ordinance in general. In this context, he or she must show that the government action

---

[4] *See, e.g.*, *Naegele Outdoor Advertising v. City of Winston-Salem*, 340 N.C. 349, 350-51, 457 S.E.2d 874, 874-75 (1995) (recognizing inverse condemnation claim based on regulatory taking occasioned by the passing of an ordinance).

[5] *See Smith v. State*, 289 N.C. 303, 322, 222 S.E.2d 412, 425 (1976) (holding that government entity waives immunity from breach of contract claims when it enters into a contract). *See also Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) (holding that"[i]n every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement").

2

complained of (i.e. denying a permit application) is "truly
irrational." (Citing an Eleventh Circuit decision.)

*WMX Techs. v. Gasconade County*, 105 F.3d 1195, 1198 (8th Cir. 1997).

First, the Ordinance is *facially* valid. That is, it satisfies the rational basis test. Under the rational basis test, a challenged law is upheld "as long as there could be some rational basis for enacting [it]," *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 181, 594 S.E.2d 1, 15 (2004), that is, that "the law in question is rationally related to a legitimate government purpose." *Standley v. Town of Woodfin*, 362 N.C. 328, 332, 661 S.E.2d 728, 731 (2008).

It is certainly a core function of a municipal government to enact ordinances for the protection of the public water supply[6]. In carrying out this function, it is rational for a municipality to enact ordinances which seeks to protect the public water supply from animal waste contamination[7]. An ordinance which prohibits the housing of animals within a certain distance from the public water supply is an ordinance rationally tailored to protect the water supply from animal waste contamination. And the fact that an ordinance does not address *every* threat to water contamination at Buckeye Lake does not render the ordinance unconstitutional. *Adams v. N.C. Dep't.*

---

[6] *See Trenton v. New Jersey*, 262 U.S. 182, 185 (1923); *Falls Church v. Fairfax County*, 272 Fed. Appx. 252, 256 (4th Cir. 2008) ("the provision and regulation of a healthful public water supply is at the core of [governmental] police power"); N.C. Gen. Stat. § 160A-312(b) ("A city shall have full authority to protect and regulate [water systems]").

[7] *See, e.g., Craig v. County of Chatham*, 356 N.C. 40, 52, 565 S.E.2d 172, 180 (2002) (recognizing government's authority to prohibit the operation of hog farms within a certain distance from an occupied residence).

*of Natural & Econ. Res.*, 295 N.C. 683, 693, 249 S.E.2d 402, 408 (1978) (holding that "[t]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied").

In the present case, it seems beyond question that the Town's passage of the Ordinance clears the low "rational basis test" hurdle. *See Rhyne*, 358 N.C. at 181, 591 S.E.2d at 16 (recognizing that "the rational basis test is the lowest tier of review, requiring that a connection between the [ordinance] and a 'conceivable' or 'any' [citations omitted] legitimate governmental interest"). Further, the fact that the Town chose *200 feet* as a buffer is not, in and of itself, particularly concerning. As the United States Supreme Court has instructed,

> [a] classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality. The problems of government are practical ones and may justify, if they do not require, rough accommodations – illogical, it may be, and unscientific.

*Heller v. Doe*, 509 U.S. 312, 321, 113 S. Ct. 2637, 2643 (1993) (internal marks and citations omitted). *See also Schenck v. City of Hudson*, 114 F.3d 590, 593-94 (6th Cir. 1997) ("A legislative body need not even select the best of the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals") (citations omitted).

Admittedly, there is strong evidence that the Town drafted the Ordinance in a way to ensure that Genesis' operation would fall within its ambit. However, this

evidence does not render the Ordinance facially invalid. The Ordinance is drafted rationally and is not limited in scope in an arbitrary or irrational way. Rather, the Ordinance sets an unambiguous buffer (200 feet) – which may not be scientific but is otherwise not irrational – and its scope is uniform: the buffer is around all of Buckeye Lake and all streams that flow into Buckeye Lake[8].

Second, I do not believe that Genesis has a valid *as applied* substantive due process claim. Specifically, there is no evidence that the Town has irrationally *applied* the Ordinance to Genesis' operation. There is no evidence that the Town has singled out or targeted Genesis *for enforcement* or that the Town is not enforcing the Ordinance to all similarly situated properties within the 200-foot buffer. *See Dunes W. Golf Club v. Town of Mt. Pleasant*, 401 S.C. 280, 301, 737 S.E.2d 601, 612 (rejecting an *as applied* substantive due process claim, holding that an ordinance which applies uniformly to all similarly situated properties is "inherently" not arbitrary). Rather, here, the action complained of consists merely of the Town enforcing a facially-valid Ordinance exactly as it is written against one who is acting in clear violation of the Ordinance's language. *See also Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3rd

---

[8] Had the Town *limited* the Ordinance's reach territorially to property located near the particular stream or section of Buckeye Lake where Genesis operates, perhaps then Genesis would have an actionable constitutional challenge. In such a case, though protecting the water supply from animal waste is a legitimate function of the Town, there might be no rational basis to have *singled out* the particular stream or section of the Lake where Genesis has its operation. Here, though, the Ordinance is not so limited, but rather applies generally to all properties near the Lake and streams supplying the public water.

Cir. 1980) (stating that the test in an *as applied* challenge is whether it was "irrational" for the town to apply the ordinance to a specific lot).

The fact that the Town may have had Genesis in mind in drafting the Ordinance does not give rise to an *as applied* challenge, where there is no evidence that the Town is not enforcing the ordinance uniformly. Governmental bodies routinely enact regulations to address some activity already occurring within their jurisdiction.[9] But the passage of a generally-applicable regulation does not give rise to a substantive due process claim by the party whose activity may have motivated the municipality to act, as long as the regulation is rationally tailored to address a legitimate concern, *see Turner Broad. Sys. v. FCC,* 512 U.S. 622, 652, 114 S. Ct. 2445, 2464 (1994) (stating that a Court will generally concern itself with some "alleged illicit legislative motive" where there is otherwise a conceivable rational motive), and the law is rationally applied to the lot in question, *see WMX Techs., supra.*[10]

---

[9] For instance, ordinances which prohibit adult establishments in certain areas are constitutional, even if enacted with the motivation to prevent a particular establishment from operating at a particular location. *See, e.g., D.G. Restaurant Corp. v. Myrtle Beach*, 953 F.2d 140 (1991); *Cricket Store 17 v. City of Columbia*, 97 F.Supp.3d 737 (2015) ("as applied" challenge).

[10] Our Court has held that legislation which established a general buffer and size restriction for landfills was constitutional even though *the purpose* of the legislation may have been to prevent a particular company from constructing certain landfills near our coast. *Waste Industries USA v. State*, 220 N.C. App. 163, 180, 725 S.E.2d 875, 887-88 (2012) (applying rational basis test). Specifically, the Court noted that the legislation did not totally prohibit large landfills, but merely restricted where they could be built and the restrictions were rationally related to address a legitimate governmental concern. *Id*. at 180, 725 S.E.2d at 888.

In sum, the Ordinance on its face is not arbitrary in a constitutional sense, notwithstanding evidence that the Town drafted the Ordinance with Genesis in mind. *See United States v. O'Brien*, 391 U.S. 367, 383 (1968) ("Inquiries into congressional motives or purposes are a hazardous matter"). There is a rational basis for the Ordinance. Further, the Ordinance has not been applied arbitrarily to Genesis' operation. Rather, the buffer is unambiguous (200 feet) and applies uniformly to all property near Buckeye Lake and to all streams feeding into Buckeye Lake. Genesis may have *other* claims against the Town for the Town's action. However, my vote is to reverse the trial court's denial of the Town's motions for directed verdict and JNOV on Genesis' substantive due process claim.

## II. Breach of Lease Summary Judgment

My vote is to reverse the trial court's grant of summary judgment in favor of Genesis on the Town's breach of Lease claim.

The Lease provides that Genesis shall not use or permit the Leased Premises to be used "for any purpose which violates any law." The majority holds that since it is not illegal to operate a wildlife refuge and education center, there is no breach of the Lease. However, I believe that the majority reads the Lease provision far too narrowly.

While I agree with the majority that the "illegal purpose" provision in the Lease prevents Genesis from engaging in activities which are illegal, e.g., operating

7

a gambling casino, I believe that the plain reading of the provision language also allows a landlord to declare a default where the tenant *purposefully persists* in violating zoning, setback, building, or other ordinances in the use of the landlord's property. To me, it seems beyond question that a landlord can declare a default where the tenant persists in violating laws concerning how the landlord's land may be used.

Here, there is evidence that Genesis has *persisted* in violating certain ordinances regarding the maintenance of certain structures and the housing of animals on the Property. Accordingly, I believe that there is a genuine issue of material fact that Genesis has breached the Lease provision preventing Genesis from using the Property for a "purpose which violates any law."